ADKINS et al. v. GILLESPIE. (No. 7627.)

(Court of Civil Appeals of Texas. Dallas. Oct. 21, 1916. Rehearing Denied Nov. 18, 1916.)

1. VENDOR AND PURCHASER ⬦130(8)—CONTRACTS—CONSTRUCTION—TITLE OF VENDOR.

Under contract for sale of realty contingent on showing marketable title, an abstract, showing that certain vested interests created by judgment were outstanding, did not show such record title as was in contemplation of the parties.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 246; Dec. Dig. ⬦130(8).]

2. JUDGMENT ⬦504(1) — VALIDITY—COLLATERAL ATTACK.

Where final judgment in partition shows that commissioners departed from the first judgment and their instructions and substituted other lands for those directed to be partitioned, the judgment is void, and does not affect the title of any of the parties, and is subject to collateral attack.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 944; Dec. Dig. ⬦504(1).]

3. JUDGMENT ⬦495(1)—COLLATERAL ATTACK —PRESUMPTIONS.

In determining whether title offered was marketable, where the abstract showed a simple partition suit in which the commissioners departed from the primary judgment, it cannot be said that the presumption must obtain that pleadings were filed and evidence introduced on the hearing which authorized such final judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 549½, 933; Dec. Dig. ⬦495(1).]

4. VENDOR AND PURCHASER ⬦130(2)—TITLE OF VENDOR—"MARKETABLE TITLE."

A good title may be unmarketable, since a marketable title is one free from judicial doubt or uncertainty as to facts under which possession can be acquired and retained without litigation.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 246; Dec. Dig. ⬦130(2).

For other definitions, see Words and Phrases, First and Second Series, Marketable Title.]

5. VENDOR AND PURCHASER ⬦130(7)—TITLE OF VENDOR—"MARKETABLE TITLE."

If an abstract shows merely a title by limitation, it is not a marketable title, since litigation may arise in regard to it.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 246, 247; Dec. Dig. ⬦130(7).]

6. VENDOR AND PURCHASER ⬦140—TITLE OF VENDOR—MARKETABLE TITLE.

Under a contract by which the vendor agrees to convey marketable title, a showing of title by limitation, made only by ex parte affidavit, is wholly insufficient; such an affidavit being purely hearsay and inadmissible as evidence.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. ⬦140.]

7. VENDOR AND PURCHASER ⬦130(7)—TITLE OF VENDOR—RIGHTS OF VENDEE.

Under a contract requiring the vendor to convey marketable title, the vendee need not look beyond the abstract furnished him, and although the vendor has good title by limitation, the vendee's rights are not to be determined on showing made on the trial of his action to recover money deposited, brought long after notification of rescission.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 246, 247; Dec. Dig. ⬦130(7).]

Error from Dallas County Court; T. A. Work, Judge.

Action by A. C. Gillespie against A. C. Adkins and others. Judgment for plaintiff, and defendants bring error. Affirmed.

K. R. Craig, of Dallas, for plaintiffs in error. Spence & Haven and W. J. Rutledge, Jr., all of Dallas, for defendant in error.

TALBOT, J. We extract from the briefs of the parties the following statement of the nature and facts of the case: On the 18th day of May, 1914, plaintiffs in error A. C. Adkins and W. A. Polk entered into a written contract with defendant in error, A. C. Gilles-

pie, for the exchange of lands. Adkins and Polk were to convey to Gillespie lot No. 1 in block No. 3 of the Houston & Texas Central Railway Company's addition to the city of Dallas. In exchange Gillespie was to convey to Adkins and Polk another tract of land in the city of Dallas, a description of which is unnecessary. It was provided that each party should "within 10 days furnish to the other party an abstract of title down to date, showing a marketable title to the land put into the exchange," and that 30 days should be allowed for removing any objections which might be made by the other party. It was further provided that if the title to the land to be put in by either party should not be shown to be marketable, that the deal might be declared off by the other party. It was also stipulated that $400 should be deposited by each party as a forfeit for failure to comply with the contract, one half to be paid to B. T. Barry real estate department, as liquidated damages, and the other half to the other party. The money was deposited by both parties, $400 each, with Bryan T. Barry real estate department, composed of Bryan T. Barry, John T. Payne, and M. L. Moore. The abstract of the title of Adkins and Polk was examined for Gillespie by Coombes & McGuire, attorneys, and in an opinion delivered in writing to him certain defects in the title of Adkins and Polk were pointed out. These defects, which were set out in Gillespie's amended petition, were, in substance, that James N. Smith, to whom the land embracing this lot formerly belonged, devised by will all his property to his daughter, Sarah Francis Smith, from whom the Houston & Texas Central Railway Company afterwards purchased the land embracing this lot. The Houston & Texas Central Railway Company conveyed the lot in controversy to S. F. Needham. After this last-named conveyance, but before it was recorded, the heirs of the widow of James N. Smith recovered this lot from Houston & Texas Central Railway Company. The interests of some of the heirs of Mrs. Smith had passed to Houston & Texas Central Railway Company, but the interests of others had been conveyed and were outstanding in other persons, as follows: Louisa Hedges and E. A. Walker conveyed to Sarah A. Cole and W. P. Cole and G. A. Cole to John D. Cole; Minerva, Clara and Emma Wood to G. C. Cole; John C. Cole and Tennessee Brandenburg to N. J. Husted, who conveyed to G. C. Cole; and that "the children of Mrs. Harrell do not part with their interest therein." Gillespie alleged that the defects enumerated had been pointed out to Adkins and Polk, but they had not cured them. The opinion of Coombes & McGuire was furnished to Adkins and Polk, and the parties representing them in the proposed exchange. It is shown that at the expiration of 30 days from the date of the original opinion by Coombes & McGuire, a supplemental opinion was furnished by them to A. C. Gillespie, and this supplemental opinion called attention to the fact that nothing had been presented to the said Gillespie's attorneys curing the defects pointed out in the title, and up to the time this case was tried in the trial court no information other than that contained in the abstracts of title was ever presented to A. C. Gillespie. It appearing to Gillespie that Adkins and Polk would make no further showing curing the defects pointed out in the abstract, he notified them and Bryan T. Barry real estate department, the real estate agents connected with the proposed exchange, that he would not accept the title as shown by the abstracts, and that he demanded a refund to him of the $400 deposited by him as a forfeit for failure to comply with the contract. The $400 not having been returned to Gillespie, he, on the 20th day of April, 1915, brought this suit against Adkins and Polk and Barry, Payne, and Moore for the recovery of the same. Adkins and Polk filed an answer to Gillespie's original petition, denying generally Gillespie's allegation that the title was not marketable, and by way of cross-action, alleging compliance with the terms of the contract, Gillespie's refusal to perform the contract and praying for the recovery of the $400 deposited by Gillespie as a forfeit for his failure to so perform the contract.

By supplemental answer Adkins and Polk replied to the allegations of Gillespie's amended petition, setting out specific defects in their title, to the effect that: (1) The abstract showed that after the suit by the heirs of Mrs. Smith against Houston & Texas Central Railway Company, in which they recovered by the partition this lot among others, a suit for partition among themselves was brought by the heirs of Mrs. Smith, to which suit all the heirs named in Gillespie's petition were parties. That in this suit, after the decree ascertaining heirship and appointing commissioners, an agreement was entered into between the heirs and the Houston & Texas Central Railway Company by which there was an exchange of lots, the Houston & Texas Central Railway Company giving certain lots which had been set apart to it in the partition by the former suit, for certain other lots, including the one in controversy, which had been set apart to the heirs. That in accordance with this exchange the commissioners substituted the lots received from the Houston & Texas Central Railway Company for the lots released to it, and partitioned the whole among the heirs. That this exchange and substitution of lots was reported by the commissioners in their report of partition, and the partition as so made was approved by the court—district court of Dallas county—on December 14, 1883, and decree entered vesting title in the several distributors in accordance with such partition. The supplemental petition set out

the lots received by the several heirs alleged by Gillespie to have claims against this lot, as follows: One share, which was one-twelfth of the whole, was set apart to the heirs of Mrs. L. E. Walker, among whom were Louisa Elizabeth Hedges and E. A. Walker, consisting of lots 2, 18, 19, and 20 in block 3, all of which were by the partition between heirs and Houston & Texas Central Railway Company set apart to the heirs; one share, one-twelfth, was decreed to the heirs of Calvin G. Cole, among whom were G. A. Cole, John C. Cole, Emily Wood, Minerva Clark (then Preston), and the children of Sarah Harrell. This share consisted of lots 6, 7, and 17 in block 18, which were set apart to the Smith heirs in the former suit, and lots 1, 2, and 3 in block 4, and lot 17 in block 3, acquired by the exchange referred to from Houston & Texas Central Railway Company; of this, lot 3 in block 4 was set apart to the children of Sarah Harrell as their share of the whole. Defendants further alleged that the purchase by Sarah A. Cole of the interests of Louisa Hedges and E. A. Walker, as well as the purchases by John D. Cole, of the interests of W. P. Cole and G. A. Cole, and the purchases by G. C. Cole of the interests of Minerva Clark and Emma Wood, were all made pending the partition suit between the heirs, and such purchasers were concluded by the judgment therein. That N. J. Husted purchased the interests of John C. Cole and Tennessee Brandenburg before the decree appointing commissioners for partition, but in his conveyance thereof to G. C. Cole, made after the partition, he identified such interests as the same lots set apart by the partition to the heirs of Calvin G. Cole, the ancestor of his vendors.

Adkins and Polk further alleged: That the abstract showed the absence of any assertion of claim by the Houston & Texas Central Railway Company to any of the lots formerly belonging to it, and which had, by the exchange referred to, been taken by the commissioners and partitioned among the heirs, and the acquiescence of all parties in the decree for such a long period of time, 30 years. That the judgment was conclusive of all the rights of all the parties. Or, if not conclusive as to the minors, the children of Sarah Harrell, it became so at the expiration of 2 years from the arrival of each of them at its majority. That the judgment had never been set aside or appealed from, and more than 2 years had expired since the date at which the youngest child of the Harrell minors, then living, arrived at its majority. They also pleaded that they and those under whom they claimed were and had been for more than 35 years in the actual possession and occupancy of the lot under claim of right adverse to all the world. That this fact was commonly and generally known in the community where said land was situated, and there were and still are many credible persons known to plaintiff who are cognizant of the fact and to whom plaintiff had been referred. That there is and can be no doubt nor dispute about that fact and none was suggested by plaintiff or his attorney.

The title to the property involved was originally in James N. Smith. He left a will, which was duly probated, bequeathing practically all his property, including the tract of land in which the lot in controversy is embraced, to his daughter, Sarah F. Smith, a daughter by a former marriage; with a life estate in a part of his property to his widow, with remainder over to said daughter. This daughter subsequently married J. H. Bullington, and, after the death of Bullington, conveyed the tract embracing the lot in controversy to the city of Dallas. Subsequently, on November 28, 1871, the city of Dallas conveyed it to trustees of Houston & Texas Central Railway Company, who subsequently conveyed to the railway company.

Malinda Smith, whose maiden name was Cole, the widow of James N. Smith, died without issue, leaving her mother, Polly Cole, surviving her, who later died. On March 11, 1875, the brothers and sisters of Malinda Smith, who were living, and the descendants of those dead, instituted suit in the district court of Dallas county against Houston & Texas Central Railway Company, for the recovery of one-half of the 6-acre tract embracing this lot, as well as one-half of another tract of 6½ acres adjoining this, alleging that the land was the community property of James N., and his wife, Malinda, Smith. On February 7, 1879, judgment was rendered in the said suit, giving the plaintiffs, naming them, a recovery of a one-half interest in the two tracts of land, and appointing commissioners to make partition. On January 30, 1880, the report of the commissioners was approved, and the two tracts of land partitioned between plaintiffs, who are commonly designated the Cole heirs, and the defendant Houston & Texas Central Railway Company. The commissioners in their report stated:

That they had "preserved the present system of streets, lots, and blocks, as laid out by the said Houston & Texas Central Railroad Company, in their addition to the city of Dallas. The 6½-acre tract was partitioned by lot and block numbers, giving to plaintiffs 33½ lots, and to defendant 33½ lots, each 25x90 feet. The 6-acre tract was partitioned by giving plaintiffs the N. W. half, embracing this lot, and the defendant the S. E. half. The abstract showed a judgment in suit styled J. M. Cole et al. v. J. H. Cole, No. 4483, in the district court of Dallas county of date December 5, 1882."

This judgment recited that the plaintiffs and the defendants in the suit, naming them, appeared and announced ready for trial. It adjudged that the plaintiffs and the defendant, except certain named attorneys, were the sole surviving heirs at law of Malinda Smith and Polly Cole; that the therein named attorneys were entitled to a certain interest in the lands involved in the suit;

and the heirs of Malinda Smith and Polly Cole were entitled to a certain interest in said lands and fixed their interests. The minors, Walter Walker, Ida E., Travis L., Walter, Eddie, Jesse, Thomas, and Clay, Harrell appeared by their guardian ad litem, J. T. Downs, appointed by the court.

The decree then proceeds to appoint commissioners to "appraise, value, and partition" the lands, describing the portion of the two tracts, the same as in the partition between the heirs and Houston & Texas Central Railway Company. The court noted at end of decree that other lands sought to be partitioned were not sufficiently described, but that this decree should not affect a future partition of them.

The abstract also showed a decree which had been entered in said cause as of date December 14, 1883, on the report of the commissioners of partition. The decree copies in full the report of the commissioners, which, reciting the appointment, sets out a description of the property which they were directed to partition, and added:

"We, the undersigned commissioners, after being duly sworn, and notifying the parties on the ―――― day of December, 1882, proceeded to appraise, value and partition said above-described premises between the several part owners as directed in said writ; and having found upon survey that the three acres last above described had also been heretofore subdivided into lots and blocks appropriately named and numbered, and fronting and abutting upon recognized streets and alleys, and being advised that an agreement has been entered into between the part owners of said above-described premises, and the Houston & Texas Central Railway Company, by the terms of which agreement the said part owners were to exchange lot 14, block 17, lots 6, 7, 8, 9, 10 and 11, block 19, lot 3, block 29, lot 18 in block 17, lot 1 in block 18, lot 28 in block 17, and lot 1 in block 3, of the railroad addition to the city of Dallas, all comprised in said above-described premises for certain other lots not included in said boundaries, to wit: Lots 17 and 18 in block 9; lots 13, 21, 22, and 23 in block 16; lots 18, 19, 20, 21, 22, 23, 24, 25, and 26 in block 6; lots 1, 2, and 3 in block 4; lot 17 in block 3; lot 7 in block 29; lots 3 and 4 in block 3; lots 1, 2, and 3 in block 16; lots 3 and 4 in block 28; lots 8 and 9 in block 4; lot 2 in block 28; lot 14 in block 16; lots 10, 11, and 12 in block 17, and fractional lots 3, 4, and 5 in block 19 of the Houston & Texas Central Railway Company addition to the town of Dallas, and after duly appraising each lot separately, we divided the whole into twelve equal parts according to the appraised value thereof, and allotted," etc—

setting out the several lots awarded to each of the several shares. To the heirs of Calvin G. Cole, among whom were included, of the parties indicated by plaintiffs' petition, whose titles were outstanding, W. P. (William) Cole, G. A. Cole, Minerva Preston (Clark), Emily (Emma) Wood, John C. Cole, Tennessee Brandenburg, and the children of Sarah Harrell, were alloted lots 1, 2, and 3 in block 4; lot 17 in block 3; lots 6, 7, and 17 in block 18. Of these lots 1, 2, and 3 in block 4 and lot 17 in block 3 were obtained by the exchange from Houston & Texas Central Railway Company. Of this allotment

the commissioners awarded lot 3, block 4, to the children of Sarah Harrell. To the heirs of Mrs. L. E. Walker, among whom were the other heirs whose interests plaintiffs alleged were outstanding, viz. Louisa Hedges and E. A. Walker, were allotted lots 2, 18, 19, and 20 in block 3; lots 7, 8, and 9 in block 17; and lot 23 in block 3. None of these were embraced in, or affected by the exchange. Lot 3 in block 4 was recommended to be apportioned to the minor heirs of Sarah Harrell for the reason stated in the report:

"We deem said award beneficial to all the other part owners of said share awarded to the heirs of Calvin G. Cole, the remainder of said heirs being adults and thus enabled to dispose of their respective interests without further costs of partition."

The commissioners appraised the property at $825 for each share and the whole at $9,900. Concluding the recital of the report of commissioners the decree proceeds:

"And there being no opposition, and the same having been fully considered, it is ordered, adjudged and decreed by the court that the same be in all things approved."

Thereupon the commission proceeded in the usual form to vest and divest title in accordance with the allotment made by the commissioners, expressly vesting title to lot 3, block 4, in the minor heirs of Sarah Harrell. The record shows no motion for new trial, appeal from or other proceeding to review or vacate the decree of partition. There is nothing in the record showing that the Houston & Texas Central Railway Company has ever asserted any claim to any of the lots which were obtained from it by the exchange.

The abstract further showed a deed executed by J. W. Ferris, Anson Rainey, John H. Cole, M. V. Cole, J. L. Cole, J. T. Downs, Eliza J. Funkhouser, and W. A. Cole (owning nine-twelfths of the land) to Houston & Texas Central Railway Company in consideration of $1, all the lots, identified by lot and block numbers, which the report stated had been given by the part owners to the Houston & Texas Central Railway Company in the exchange. J. M. Cole purchased the interests of A. G. Walker, Jr., and M. E. (Elizabeth) Callaway, two of the five heirs of L. E. Walker, in 1881. Proceedings in administration showed that J. M. Cole died January 21, 1883. S. A. Cole, his widow, was appointed administratrix, who later filed an application to sell lot 7 in block 29 (set apart in the partition to J. M. Cole), and two-fifths undivided interest in lots 7, 8, and 9, block 17, and 2, 18, 19, and 20 in block 3 (set apart to the Walker heirs), and lots 5 and 6 in block 3 (set apart to J. M. Cole). After the order of sale was entered, the administratrix was authorized to make another exchange of lots with Houston & Texas Central Railway Company, which was done in January, 1884. The abstract further showed a deed from Houston & Texas Central Railway Company to S. F. Needham, dated June 28, 1878, recorded Jan-

uary 31, 1884, conveying lot 1 in block 3 for a consideration of $75 of which $50 was paid and note due in 12 months executed for $25. Receivership proceedings against Houston & Texas Central Railway Company; order discharging all the joint receivers, except Chas. Dillingham and authorizing him to collect notes given for the purchase money of lands and execute releases of liens. Deed of release from Dillingham, receiver, to S. F. Needham, of the lien for the $25; deed from S. F. Needham and wife to A. M. McAllister, dated August 29, 1879, conveying lot 1, block 3; deed from A. McAllister, joined by her husband, to W. R. Fisher, dated June 24, 1891, conveying 30x76 feet off same lot; W. R. Fisher and wife deeded to John Tomson and wife, dated November 29, 1893, conveying same 30x76 feet; Mrs. Amanda McAllister and husband to John Tomson, deed dated May 20, 1892, conveying lot 1, block 3; deed from John Tomson and wife to W. A. Polk and A. C. Adkins, dated August 4, 1913, conveying lot 1, block 3. The abstract also showed affidavit of John Tomson, dated August 4, 1913, identifying A. M. F. McAllister as the same person as Mrs. A. McAllister and Mrs. Amanda McAllister. Affiant also stating:

"Since our purchase of this property in 1892, same has been improved, rented, and used continuously by us through our tenants, and our title has never been called in question."

The case was tried without a jury, and the result was a judgment for plaintiff Gillespie for the recovery of the $400, the amount of the deposit, and for interest, and the case is now before this court on writ of error.

The trial court found, among other things, as shown by his conclusions filed, that the decree of partition in the suit of J. M. Cole et al. v. J. H. Cole, No. 4483, district court of Dallas county, was fatally defective, because it undertook to partition among the parties to that suit, upon the report of the commissioners, without appropriate pleadings and proof, lands which said commissioners reported said parties had agreed to take in exchange for the lands which they had been ordered to partition; the language of the trial court being:

"No appropriate pleadings providing for the substitution of the lands which the commissioners actually partitioned for the lands ordered to be partitioned are shown in the abstracts of title furnished to plaintiff Gillespie; and no such contract as is mentioned in the commissioners' report is shown in the abstract of title."

The plaintiffs in error, who will hereinafter be referred to as defendants, contend: (1) That the abstract of their title to lot No. 1 in block No. 3, which was to be given in exchange for the property of defendant in error, who will hereinafter be referred to as plaintiff, does not and did not show that there was any outstanding title in any of the parties to the partition suit of J. M. Cole et al. v. J. H. Cole, which they and each of them are not barred and estopped from asserting.

(2) That the record of said partition suit, as disclosed by said abstract, showed that all the heirs named in the petition of the plaintiff were parties to said suit as plaintiffs, the heirs of Sarah Harrell being represented by guardian appointed by the court; that the said decree of partition purports to have been made upon an agreed exchange between the parties to said suit and the Houston & Texas Central Railway Company, whereby an exchange was made of the lots including the lot in controversy to the said railway company for other lots formerly belonging to said company, which latter were substituted and partitioned by the commissioners; that the decree of the court approving and adopting the report of the commissioners was, in effect, the ratification of such exchange, and the presumption must obtain, in the absence of any appeal from or effort to vacate said decree for more than 30 years, that whatever amended pleading and evidence, as were necessary to authorize the court to act in the matter of substitution of other lots for some of the lots embraced in the original decree of partition therein, were filed in said cause and brought to the attention of the court, and that all steps necessary to authorize the court to take the action it did were taken; therefore the decree became and was conclusive and binding on all the parties thereto and their privies. (3) That after such great lapse of time, the presumption must obtain that the several distributees of said estate, including the parties named by plaintiff, have appropriated the parcels of land respectively set apart to them, and that innocent third persons have acquired such interest therein as to render impossible a repartition of said land, or the restoration to the Houston & Texas Central Railway Company of the land received from it. (4) That in the absence of any showing to the contrary, the presumption is that the several distributees acquiesced in the partition and accepted and converted or still hold the respective portions of the estate set apart to them. In that situation, no one of them could assert a claim to any other part of the land. (5) That any assertion of title to the lot in controversy by any one of the parties named in plaintiff's petition would be a collateral attack on the judgment of partition. The defendants further contend that an undisputed occupancy and possession of the lot in controversy, maintained continuously for more than 30 years by the successive holders of the title, was shown in the abstract of title furnished the plaintiff by the affidavit of John Tomson, and that the undisputed evidence on the trial of this case was that the defendants and those under whom they claimed had been in the adverse and uninterrupted possession, using and occupying said lot under deeds duly recorded for more than 30 years; that for more than 20 years next before the submission of the ab-

stract of the title to plaintiff all taxes on said lot were paid by said holders, and that there was no suggestion by the testimony, or otherwise, that any fact or facts existed or might be reasonably supposed to exist, which could raise any doubt about these facts, or which could in any wise defeat or render doubtful the legal effect of such continuous adverse possession under deeds duly registered, with the payment of taxes as aforesaid.

[1, 2] As has been shown, the contract for exchange of properties, executed between the defendants on the one part and the plaintiff on the other part, was conditioned upon the furnishing by defendants of "an abstract of title down to date showing a marketable title to the land put into the exchange," with the understanding that 30 days would be allowed to remove any objections made to the title by said Gillespie. The abstract of title furnished to plaintiff by defendants showed that a judgment, a link in their chain of title, entered by the district court of Dallas county, Tex., in the suit of J. M. Cole et al. v. J. H. Cole, vested interests in certain heirs of Malinda Smith, and that certain of these interests, involving the lot in controversy, as pointed out in the opinion of Coombes & McGuire, delivered to plaintiff, were outstanding, and hence the title in defendants was not such a record title as was in the contemplation of the parties and as plaintiff had agreed to take. We agree with the contention of the plaintiff to the effect that where the final judgment in a suit for partition of certain described lands shows that the commissioners appointed to partition said lands departed from the first judgment in said suit and their instructions and substituted other lands for those which they were directed to partition, such judgment is void, does not affect the title of any of the parties to the said suit in any of said lands, and may be collaterally attacked. Such was the character of the judgment entering into defendants' chain of title. The abstract of title furnished by them to the plaintiff showed that certain named parties as those of the brothers and sisters of Malinda Smith, who were living, and the descendants of those dead, and J. W. Ferris, A. Rainey, and J. T. Downs, were the joint owners of, among other land, the northwest one-half which included the lot in controversy, of a tract of 6 acres of land that had been recovered from the Houston & Texas Central Railway Company, and that as such owners the parties named were entitled to recover their respective interests fixed by the court as dependent upon the relationship of same to Malinda Smith, and of the others, their interests as attorneys who had acquired same as attorneys' fees. The judgment directed that said tract, among other lands, should be divided into 12 equal parts and allotted to the different parties named therein according to their respective interests.

Commissioners were appointed by said judgment to appraise value and partition said tract with other lands described therein, and in obedience to the writ issued from the court reported that they had proceeded to appraise, value, and partition the said 3-acre tract, together with other lands described in said writ. The commissioners further reported that having found upon survey that the said 3-acre tract had been theretofore subdivided into lots and blocks appropriately named, and numbered, etc., "and being advised that an agreement had been entered into between the part owners of said above-described premises and the Houston & Texas Central Railway Company, by the terms of which agreement the said part owners were to exchange" certain named lots, all comprised in said 3-acre tract, including the lot involved in this suit, for certain other lots not included in said tract, that they had proceeded to substitute the lots to be secured by said part owners in exchange for the lots comprised in the 3-acre tract and to partition and allot said substituted lots instead of those which had been directed to partition. This report of the commissioners was by the judgment of the court approved, and a decree entered divesting and vesting title in accordance therewith. The Houston & Texas Central Railway Company was not a party to that suit, and the decree of partition just referred to did not undertake or purport, so far as shown by the record sent to this court, to divest the title of the Cole heirs to the lot in controversy in this suit and other lots to be received by the railway company in the exchange referred to in the commissioners' report, and vest same in said company. The partition made by said commissioners and the decree of the court based thereon dealt only with the lots to be received by the Cole heirs in said exchange, and do not, except possibly by inference, purport to divest the title of the lot in controversy out of any one or to vest it in any one.

[3] There is nothing in the abstract of title furnished defendant in error or in the proceedings had in the trial of this case to show that by pleadings or otherwise the parties sought specific performance of the executory contract referred to by the commissioners in the report. Indeed, there is nothing in said abstract or proceedings to show that such a contract ever existed except the bare statement in the final decree of partition purporting to be a part of the report of the commissioners to the effect that said commissioners had been advised that such a contract had been entered into between the parties. It affirmatively appears, we think, from the decrees contained in the abstract, that the suit in which they were rendered was simply an ordinary suit for the partition of the property described in the pleadings. This being true, we do not believe it correct to say, in determining wheth-

er or not the defendants furnished ·plaintiff an abstract showing a marketable title, that the presumption must obtain that pleadings were filed and evidence introduced upon the hearing of the commissioners' report before the final partition decree was entered in the suit of the Cole heirs, which authorized the district court of Dallas county to substitute lots not included in the 3-acre tract for lots included therein, and which the commissioners had been ordered to partition and distribute among said heirs.  We recognize the rule announced in the cases cited by the defendants in respect to collateral attacks upon judgments and the presumptions which ordinarily must obtain when a court of record assumes to exercise jurisdiction in a given case as to the validity of its proceedings, but we have concluded that the several presumptions which must obtain to sustain the position of the defendants in this case cannot be indulged.  We think that notwithstanding the final decree of partition confirmed the report of the commissioners, in which it was recited that said commissioners had been advised that the Cole heirs had entered into an agreement with the railway company, by the terms of which said heirs were to exchange lots with it, said decree is insufficient to divest the title of the Cole heirs in and to the lot involved in this suit.  But whether or not the abstract furnished the plaintiff showed a good title in the defendants is not the question.

[4] The contract entered into between the defendants and the plaintiff for the exchange of lands obligated and bound the defendants to furnish an abstract showing a "marketable title," and it has been correctly held that a good title may be unmarketable sometimes. The definitions of "marketable title" found in the adjudicated cases are variously framed, but there is no material difference attached to its meaning by any of them.  We give some of the definitions found in adjudicated cases.  A marketable title is one "free from judicial doubt or uncertainty as to matter of facts, and one in which the possession can be acquired and retained without litigation or judicial decision." Vought v. Williams, 46 Hun (N. Y.) 638.  It "is one that is free from reasonable doubt.  There is reasonable doubt when there is uncertainty as to some fact appearing in the course of its deduction, and the doubt must be such as affects the value of the land, or will interfere with its sale." Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634; Roberts & Corley v. McFadden, Weiss & Kyle, 32 Tex. Civ. App. 47, 74 S. W. 105; Austin v. Barnum, 52 Minn. 136, 53 N. W. 1132.  "It is one of such a character as should assure to the vendee a peaceful enjoyment of the property. Barnard v. Brown, 112 Mich. 452, 70 N. W. 1038, 67 Am. St. Rep. 381.  A marketable title is defined to be, "in equity, a title in which there is no doubt involved either as to matter of law or fact.

Dalzell v. Crawford (Pa.) 2 Law J. 17, 1 Pars. Eq. Cases, 3745."  In Brokaw v. Duffy, 165 N. Y. 391, 59 N. E. 196, it is said that "a title is not marketable when it exposes the party, holding it to litigation. * * * The distinction which once prevailed as to marketable titles between courts of law and equity no longer exists, and an action at law by the vendee to recover back purchase money paid may be based upon the same ground that would justify a court of equity in refusing to compel him to accept the title."

[5] The record title shown by the abstract furnished the plaintiff was not such, in our opinion, as to require the plaintiff to accept it under the terms of the contract entered into with defendants, but the question remains: Did said abstract show such a title by limitation as to require plaintiff to accept it?  We think not.  The title of the defendants by limitation depends very probably "on an issue of fact as to which some dispute may arise."  If so, such a title is not the marketable title called for in the contract.  Heller v. Cohen, 154 N. Y. 299, 48 N. E. 527; Cline v. Booty, 175 S. W. 1081; McLaughlin v. Brown, 126 S. W. 292.

[6] But under a contract, as in this case, by which the vendor agrees to convey marketable title, a showing of title by limitation made only by an ex parte affidavit shown in an abstract is wholly insufficient.  The only evidence of title in defendants by limitation contained in the abstract furnished plaintiff is the affidavit of John Tomson, one of the parties through whom defendants sought to deraign title.  In this affidavit Tomson simply said:

"Since our purchase of this property in 1892, same has been improved, rented, and used continuously by us through our tenants, and our title has never been called in question."

This affidavit does not state the requisite facts to show title by limitation, but if it did it would not suffice to meet the demand of the contract entered into between the defendants and the plaintiff for an abstract showing marketable title.  The mere ex parte affidavit of a party as to limitation forming a part of an abstract of title, even when placed of record, is purely hearsay and inadmissible as evidence in the courts, and is not record evidence of title.  Cline v. Booty, supra, and authorities therein cited.

[7] Under his contract plaintiff did not have to look beyond the abstract of title furnished to him by the defendants, and although the trial court found that as a matter of fact defendants had a good title by limitation plaintiff's rights were not to be determined upon the showing made at the trial of this case, long after he had notified defendants of his determination to rescind the contract of exchange, and the trial court was justified in rendering its judgment in ignoring such finding and the evidence upon which it was based.

We have discussed only what we conceive

to be the controlling questions arising on the appeal, and the conclusions reached and expressed rendered it unnecessary to consider the subsidiary or collateral questions presented and discussed in the able brief of counsel for the defendants.

Believing the record discloses no such error as would justify us in reversing the case, the judgment of the court below is affirmed.