## DALLAS JOINT STOCK LAND BANK OF DALLAS v. SUPERIOR OIL CO.

### No. 12727.

Court of Civil Appeals of Texas. Dallas.

Jan. 20, 1940.

Lawther, Cramer, Perry & Johnson, of Dallas, for appellant.

Thompson, Knight, Baker, Harris & Wright and Sol Goodell, all of Dallas, for appellee.

YOUNG, Justice.

Suit in the trial court was for return of earnest money, following rejection of title to land for alleged defects. On February 6, 1936, plaintiff, The Superior Oil Company, and defendant, The Dallas Joint Stock Land Bank of Dallas, entered into a written contract whereby the former agreed to purchase from the latter, two tracts of approximately 21,000 acres of land, the consideration being $141,942.50 in cash and certain overriding royalty interests reserved to defendant bank. Upon execution of the contract, plaintiff deposited $10,000 with defendant as earnest money, and, material to this suit, the sales instrument provided:

"This contract is entirely conditioned on title of Seller to the lands hereinabove described being of record made to appear good and marketable in the opinion of attorneys for Buyer (subject to the exceptions hereinabove provided for) within sixty days from this date, or upon Buyer within such time in writing waiving defects therein. If within sixty days from the date hereof defects are not waived or title is not approved by said attorneys, all obligations created by this contract shall terminate, and each of the parties shall be relieved of all liability to the other upon Seller returning to Buyer the deposit of $10,000.00 hereinafter provided for.

"Simultaneously with the execution and delivery hereof, Buyer is making a deposit with Seller in the amount of $10,000.00. If the pending purchase is consummated, such deposit shall be applied on the purchase price hereinabove provided for. If the purchase is not consummated because of title defects, said deposit shall be returned by Seller to Buyer. If title to the above described tracts is good and marketable, subject to the exceptions hereinabove provided for, or is so made within sixty days from the date hereof, and proof of such fact is submitted to Buyer, and Buyer fails to consummate the pending purchase, the aforesaid deposit of $10,000.00 shall be retained by Seller as liquidated damages."

The Superior Oil Company, through its attorneys, examined abstracts and duly furnished defendant with title opinion showing objections and requirements; and, at the end of the sixty-day period, rejected the title because of alleged defects, demanding a return of earnest money. Defendant bank refused to refund the $10,000, claiming that it had tendered good and merchantable title, considering the curative matter furnished the plaintiff; and upon trial to the court, judgment was rendered for plaintiff, from which this appeal was taken. At the request of defendant, the

trial court made and filed extensive findings of fact and conclusions of law, in substance, that title to the lands was not then good and marketable, and that plaintiff's attorneys acted in good faith in rejecting the same.

In fifteen propositions, followed by an exhaustive statement of the testimony, defendant has attempted to demonstrate that plaintiff's attorneys erroneously disapproved title to the realty, with a result that the earnest money was properly forfeited under the terms of the contract. On the other hand, appellee's brief concisely presents the more important title objections which it claims were not cured; viz.: (1) No final judgment of foreclosure; (2) concerning rights of A. J. Kimball; (3) relating to Associated Oil Company's lease; the Wyche and Clopton leases; and (4), want of title to Wiley Martin Survey. Construing the contract of sale as a whole, it clearly required the seller to return the earnest money in suit if the property was not found of record to be good and marketable in the opinion of attorneys for the buyer. The good faith of buyer's counsel is not questioned in the testimony, and the trial court's finding to such effect is not challenged. An affirmance of the cause might safely rest on such contract provision. Dixie Oil Co. v. McBurnett, Tex.Com.App., 6 S.W.2d 83; Davis v. Tate, Tex.Civ.App., 242 S.W. 761. But aside from this, did defendant bank, within the sixty-day period from February 6, 1936, otherwise tender a good and marketable title? We think not, under the testimony and fact findings generally of the trial court, which again are not challenged by defendant.

Referring briefly to the primary objections urged, we find that defendant's title to the land came through two deeds of trust executed by the Sutherlands, which were foreclosed in a Dallas county district court, by judgment rendered June 8, 1934. Many defendants in this foreclosure suit were cited by publication, and did not appear in said cause through attorneys of their own selection. Such judgment as to these particular parties was not final until two years from the date thereof. Art. 2236, R.S. Neither was there made, approved, and signed by the trial court in the foreclosure cause, a statement of the evidence adduced upon the trial. Plaintiff's counsel simply required quitclaim deeds from these particular parties, the two-year period, for the Sutherland judgment to become final, not expiring until June 8, 1936. It is evident that the land in question was purchased with a view to mineral development; its value being based principally upon oil and gas possibilities; and, in this connection, the record discloses that after the above foreclosure judgment became final, defendant bank disposed of the property through a mineral lease to one oil company for $40,000, and a conveyance to another for around $146,000, still reserving a royalty interest therein. Before the latter transactions, however, certain defects which had caused plaintiff's attorneys to reject the title had been cured, including the plugging of a gas well on a portion of the original Associated Oil Company lease by R. F. Duggan, assignee. Regarding the Associated Oil Company lease objections already mentioned, the trial court found and concluded:

"Many sub-assignments of such lease were made, and assignees of approximately 1300 acres under this original lease were not made parties to the foreclosure suit, either by personal service or by publication * * *.

"Several wells were drilled without success; but one paying gas well was brought in which was operated and continued to produce until about December of 1935 * * *.

"I conclude that the outstanding interests of approximately 1300 acres of land, under the lease originally executed to the Associated Oil Company, constituted a cloud on the title and prevented same from being good and marketable. The holders of such interests, having in no manner been made parties to the foreclosure suit, were not bound by the same.

"A gas well had produced under such lease almost up to the time that the contract of sale was made. It had never been permanently abandoned. It was, at the least, a question of fact as to whether there had only been a temporary cessation of operations and activities; and the purchaser was not required to take this chance on a matter this substantial, or to buy what might prove to be a lawsuit * * *.

"* * * the defendant did not furnish plaintiff, or its attorneys, satisfactory evidence that all of the Associated Oil Company's oil and gas lease was terminated on or before April 6, 1936." (Being the end of the sixty-day contract period.)

Sufficient defects have been briefly presented whereby plaintiff's counsel could have justifiably concluded that, within the life of the sixty-day contract of sale, title to the land under search was not good and marketable. Owens v. Jackson, Tex.Civ. App., 35 S.W.2d 186; Corbett v. McGregor, Tex.Civ.App., 84 S.W. 278; Adkins v. Gillespie, Tex.Civ.App., 189 S.W. 275; Texas Auto Co. v. Arbetter, Tex. Civ.App., 1 S.W.2d 334. We therefore affirm the judgment under review.

Affirmed.