## McCROSKEY v. LADD.*

### No. 13,297; December 1, 1891.

#### 28 Pac. 216.

**Vendor and Vendee—Deed by Corporation—Marketable Title.** A vendor agreed to convey a good and sufficient title or refund any payments made. Defendants refused to accept the deed offered. It appeared that one of the deeds relied upon by the vendor in the chain of title was executed by the president and secretary of an incorporated association under their private seals, and recited that they were authorized at an annual meeting of the association to make deeds. It was held that sinœ both the recital in the deed from the association and the absence of the corporate seal failed to show any authority from the board of directors to convey, the plaintiff did not offer a good paper title within the meaning of the contract.

**Vendor and Vendee—Title Based on Statute of Limitations.—** A purchaser is not bound to accept a title resting on the statute of limitations, or to take the risk of determining from facts which he might learn dehors the record whether or not the statute of limitations can successfully be pleaded against an adverse claim.[1]

**Vendor and Vendee—Defects in Title.—**Defendants are not called upon specifically to point out defects in a title where the contract does not require it, and especially where the flaw is in a deed from a dissolved corporation.

**Vendor and Vendee.—The Flaw in the Deed from the Corporation** relates directly to the authority of the officers to act, and is not a defect which can be cured by section 1207 of the Civil Code, which provides that any instrument affecting real property recorded prior to January 30, 1873, shall be deemed to impart notice of its contents

---

*For subsequent opinion in bank, see 96 Cal. 455, 31 Pac. 558.

[1] Cited in the note in 132 Am. St. Rep. 1023, 1024, on what is a marketable title.

to subsequent purchasers and encumbrancers, notwithstanding any defect, omission or informality in the execution of the instrument or in the certificate of acknowledgment or in the absence of any such certificate.

**Vendor and Vendee—Marketable Title.**—A vendor may be able through litigation to establish a perfect title, and yet be unable to enforce a contract for the sale of his land.[1]

APPEAL from Superior Court, San Benito County.

Action on a promissory note by McCroskey against Ladd and another. Judgment for defendants. Plaintiff appeals.

J. L. Hudner and M. T. Dooling for appellants; N. C. Briggs for respondents.

PATERSON, J.—On August 25, 1887, the plaintiff agreed in writing to sell and convey certain lots to the defendants on the following terms: "$650 at this date, and the balance

---

[1] Cited and approved in McDermott v. Chatfield, 18 Cal. App. 500, 123 Pac. 540, where plaintiff sued for the return of his deposit, given upon a contract made just before the great San Francisco fire, immediately after which event he had given notice of cancellation. The court held that the destruction of the records made it impossible for the defendants to furnish a merchantable title within the contract time, so that notice of defective title was not necessary to enable the plaintiff to sue.

Approved in McDermott v. Chatfield, 18 Cal. App. 500, 123 Pac. 540, where the plaintiff, having made a deposit for the purchase of property in San Francisco under a contract giving him thirty days in which to satisfy himself as to the title, sued to recover back the deposit, the great fire occurring two days after the contract having destroyed all the records whereby he might so satisfy himself.

Cited, but not approved to the utmost, as holding that a title is not marketable if, by reason of counsel declining to approve it, a loan company declines to take a mortgage on the property: Howe v. Coates, 97 Minn. 401, 114 Am. St. Rep. 723, 4 L. R. A., N. S., 1170, 107 N. W. 404.

Cited in Fagan v. Hook, 134 Iowa, 385, 105 N. W. 157, to support the dictum that "though a good title has been held by some decisions to be one not absolutely bad, the great weight of authority is to the effect that the expression means a marketable title, one that can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as security for a loan of money."

Cited in note in 38 L. R. A., N. S., 14, 18, on what is a marketable title.

($5,850) within sixty days from this date. And said Mc-
Croskey, upon receiving said payments, agrees to make a deed
of said property to said persons, and convey title to said
premises to them; and, if said persons fail to make said pay-
ments as herein named, they shall forfeit all right to said
property, and all right to all payments made herein. If said
title is not sufficient and good, then said moneys shall be re-
funded.'' Thereupon the defendants executed and delivered
to the plaintiff a promissory note for $650. Although not
required to do so by the terms of the contract, the plaintiff
furnished to the defendants an abstract of his title, which
the latter submitted to their attorney, who, after examination,
reported that it did not show title in the plaintiff. Defend-
ants notified plaintiff of the fact, whereupon the latter fur-
nished another abstract, which was submitted by consent to
another attorney, agreed upon by the parties, for his opinion,
but the plaintiff did not agree to be bound thereby. After ex-
amining the abstract, said attorney, Archer, gave an opinion
in writing that the title was not good. This opinion was
handed to the plaintiff, but it did not point out, nor did the
defendants ever state to the plaintiff, wherein the title was
defective. The second abstract referred to was furnished
after the expiration of the sixty days named in the contract.
Soon after the opinion of Archer was given to the plaintiff,
the defendants demanded of the latter the possession of the
note referred to. After said demand plaintiff tendered to
McClay, one of the defendants herein, a deed of grant, bar-
gain and sale, in the usual form, describing the property,
and demanding payment of the sum of $6,500. The demand
was refused, whereupon this action was commenced to recover
the amount named in the note.

One of the deeds in the chain of title upon which the plain-
tiff relies was a deed from the San Justo Homestead Associa-
tion, a corporation created under the laws of this state, to one
Sowle. This deed was executed by the president and secre-
tary of said association, and attested by their individual seals.
No corporate seal was attached thereto. The deed recites that
to facilitate the sale of certain lots ''said association did, at
their annual meeting held at Gilroy, California, on the 20th
day of January, 1869, pass the following, to wit: 'Resolved,
that the president and secretary of the San Justo Homestead

Association, at the time of any sale of said lots, be, and are hereby, authorized and empowered in the name and on behalf of said association to make, execute and acknowledge a good and sufficient deed of conveyance of grant, bargain and sale to the purchaser or purchasers of any lots sold, on receipt of the purchase price thereof.'' It is not essential to the validity of a deed executed by a corporation that it should contain a recital of the authority under which it is made, unless such recital is made necessary by statute: 1 Devlin on Deeds, sec. 343. But where such authority is recited, it will be deemed to be the only authority upon which the officers executing the deed acted. The corporate seal is prima facie evidence that the officers executing the deed had been authorized by the board of directors to act. ''It is settled law in this state that a corporation can only act, can only speak, through the medium prescribed by law, and that is its board of trustees'': In re La Solidarite Mut. Ben. Assn., 68 Cal. 394, 9 Pac. 453. The recital in the deed to Sowle indicates that the authorization of the president and secretary came from the stockholders at an annual meeting of the association. At least it does not show that the authority came from the board of directors, and the absence of the corporate seal indicates that the board never acted upon the matter. The authority of the officers to execute the deed must affirmatively appear: Kahn v. Supervisors, 79 Cal. 399, 21 Pac. 849; Koehler v. Iron Co., 2 Black, 715. In cases of this kind, a title, to be good, must be one which is ''free from litigation, palpable defects and grave doubts; should consist of both legal and equitable titles; and should be fairly deducible of record'': Turner v. McDonald, 76 Cal. 180, 18 Pac. 262. The question as to whether or not the vendor has acquired a perfect title by adverse possession is not to be considered. The purchaser is entitled to a good paper title, sufficient in law, ''and was not bound to accept title resting upon the statute of limitations, or take the risk of determining from facts which he might learn dehors the record whether or not the statute of limitations could be successfully pleaded against the adverse claim'': Benson v. Shotwell, 87 Cal. 56, 25 Pac. 249.

It is claimed by appellant that the respondents were estopped from claiming any advantage by reason of these defects, because they were not pointed out at the time the

objection was made to the title; that, if they had been, the defects might have been cured. The contract does not fix any time or place any duty upon the respondents with regard to an examination into the title or notice to the appellant of any defects which might be discovered therein. The respondents were entitled to rely on the record as they found it. Assuming, however, that it was the duty of the respondents under this contract to point out any imperfections in the title discovered by them, the record shows that the plaintiff was not injured by their failure to give him notice of the defect referred to. The only object in requiring such notice in any case is to give the vendor an opportunity to correct the defect. The court found that the San Justo Homestead Association was dissolved by a decree of the county court in 1877. It would have been impossible, therefore, for the plaintiff to have removed the imperfection in his title before the time named for the completion of the purchase. Conceding, furthermore, that the only question is whether the plaintiff's title was in fact good, and that the authority of the officers of the corporation to execute the deed might have been shown by the minutes of the board of directors, it is sufficient to say that no such showing was made. Proof of the absence of the corporate seal cast upon the plaintiff the burden of showing that the president and secretary were authorized by the board of directors to execute and deliver the deed: Koehler v. Iron Co., supra.

It is claimed by appellant that the irregularity in the execution and acknowledgment of the deed was cured by the provision of section 1207 of the Civil Code. That section provides that any instrument affecting real property, recorded in the office of the county recorder prior to January 30, 1873, shall be deemed to impart ''notice of its contents to subsequent purchasers and encumbrancers, notwithstanding any defect, omission or informality in the execution of the instrument, or in the certificate of acknowledgment thereof, or in the absence of any such certificate.'' But the imperfection we have been considering is not a mere defect, omission or informality in the execution of the instrument, or in the certificate of acknowledgment thereof, but is one which relates directly to the authority of the officers to act.

At the conclusion of their brief, counsel for appellant state that respondents' objections "go to the very foundation of appellant's title," and, if approved by the judgment of this court, will obscure the title to property valued at millions of dollars in and about the town of Hollister. The fear thus expressed, however, is groundless. A vendor may be able through litigation to establish a perfect title, and yet be unable to enforce a contract for the sale of his land. We do not determine in this action whether the plaintiff's title is or is not good in fact. The stipulation in the contract that, "if said title is not sufficient and good, then said money paid shall be refunded," must be held to mean that, if there should appear to be such uncertainty about the title arising from the record as to affect its marketable value, the plaintiff would return the money or note which he had received from the defendant. The title must be free from "litigation, palpable defects and grave doubts." If it is not, "a court of equity will not compel its acceptance, and cast upon him the risk of litigation, and the embarrassment of a questionable title": Townshend v. Goodfellow, 40 Minn. 319, 41 N. W. 1056.

Judgment affirmed.

Garoutte, J., concurred.