**SWEET et al. v. BERRY.    (No. 1868.)\***

(Court of Civil Appeals of Texas. Amarillo. Dec. 21, 1921. Rehearing Denied Jan. 11, 1922.)

1. **Vendor and purchaser** ⟾75—**Vendor required to present abstract showing merchantable title before date of payment conditioned on approval of title.**

Where contract for sale of land required purchaser to make payment on certain date on approval of title by his attorneys, the vendor was required to present abstract showing a merchantable title before such date, though contract did not expressly so provide.

2. **Vendor and purchaser** ⟾140—**Obligation to present abstract within reasonable time imposed where time not fixed by contract.**

If contract for sale of land does not fix time within which vendor is required to present abstract showing merchantable title, the obligation to do so within a reasonable time before the date fixed for performance of the contract will be imposed.

3. **Vendor and purchaser** ⟾144(2)—**Vendor who made contract in good faith without title permitted to perform at time set therefor.**

A vendor who has no title at time of execution of a contract will be permitted to acquire title and make the conveyance at the

time set for performance if he made the contract in good faith.

**4. Vendor and purchaser ☞75—Purchaser did not forfeit deposit by failure to make payment in view of vendors' failure to present merchantable title.**

Purchaser did not forfeit deposit made to insure payment on specified date by failure to make payment on such date where the contract made the payment conditional on approval of title by purchaser's attorneys and where vendors had not prior to such date presented abstract showing merchantable title.

**5. Vendor and purchaser ☞143—Purchaser's retention of abstracts after time for performance did not entitle vendors to additional time in which to perfect title.**

Purchaser's failure to return abstracts showing title defective until after time for performance did not entitle vendors to additional time in which to bring suit against other persons to perfect title.

**6. Vendor and purchaser ☞78—Time held of the essence of the contract.**

Where purchaser needed the land for pasturage for his cattle and other cattle he was purchasing and desired to farm the land during the coming season, and vendors had knowledge thereof, time was of the essence of the contract providing for payment of purchase price on December 15th and delivery of possession on January 1st, and vendors were required to present abstract showing merchantable title prior to such time.

**7. Vendor and purchaser ☞140—Purchaser on discovery of defect in title not required to further examine abstract.**

Where contract to purchase land did not specifically require purchaser to point out the defects in the title, the purchaser on discovery of defect could return abstract within a reasonable time without further examination thereof.

**8. Vendor and purchaser ☞140 — Vendors, having furnished abstract when they saw fit, could not claim they were not given reasonable time in which to so do.**

Vendors, having presented abstract to purchaser at the time selected therefor by themselves, could not on purchaser's refusal to perform because of defective title claim that they did not have a reasonable time in which to furnish the abstract.

**9. Vendor and purchaser ☞144(2) — Agreement granting vendors reasonable time to correct abstract did not imply further extension on rejection of title in corrected abstract.**

If contract for sale of land requiring vendors to furnish abstract showing merchantable title impliedly granted vendors a reasonable time for correction of abstract, on purchaser's rejection of title shown thereby such implied agreement did not imply a repeated extension of time in which to perfect title after purchaser's rejection of title shown by the corrected abstract.

**10. Vendor and purchaser ☞143—Purchaser held not to have waived vendors' failure to present merchantable title within required time.**

Where purchaser, who needed land for pasturage, but who had rejected the title shown by abstract furnished by vendors as defective, agreed to meet vendors to discuss the matter of granting them additional time in which to perfect title under agreement giving purchaser possession during such time, but on vendors' failure to meet at appointed time and place purchased other land and so informed vendors, there was no waiver of the vendors' failure to present merchantable title before time fixed for performance.

**11. Vendor and purchaser ☞341(3)—Purchaser established right to deposit by pleading and proving vendors' failure to present abstract showing title before time fixed for consummation.**

Purchaser suing to recover deposit made to insure performance established his case by pleading and proving that abstract showing the title called for was not presented before the time fixed for consummation of contract, and, if there was any equitable ground excusing vendors, the burden of alleging and proving it was upon vendors.

**12. Vendor and purchaser ☞129(1) — Purchaser not required to accept defective title while contract is executory.**

Generally a purchaser is not required to accept a defective title so long as the contract remains executory.

**13. Vendor and purchaser ☞341(3)—Burden of showing purchaser's waiver of right to merchantable title at time fixed for performance is on vendors.**

Where contract for sale of land required vendors to furnish a merchantable title, and where purchaser, suing to recover deposit because of vendors' failure to furnish abstract showing merchantable title before time fixed for performance, was not in possession of the land and had not received the title paper, the burden of proving that purchaser had waived the right to a merchantable title at time fixed for performance was on the vendors.

**14. Vendor and purchaser ☞143—Opinion of purchaser's attorneys as to corrected abstract held not a waiver of defects stated in prior opinion after original examination.**

The opinion of purchaser's attorneys submitted to vendors after rejection of title shown by corrected abstract pointing out particularly one defect and stating that they had not rechecked the abstract to see if other defects had been corrected was not a waiver of other defects pointed out in opinion submitted on original examination of abstract prior to correction, and not specified in such subsequent opinion.

**15. Vendor and purchaser ☞341(2)—Allegations as to defective title held too general.**

In purchaser's action to recover deposit on vendors' failure to furnish abstract showing merchantable title at time of performance, al-

---

legations in petition that the title to the land was shown by the abstracts to be defective in divers and sundry particulars which had been pointed out *held* too general.

**16. Appeal and error ⊕1040(11)—Failure to sustain exceptions to general allegations harmless where specific allegation was sufficient.**

In purchaser's action to recover deposit on vendors' failure to furnish abstract showing merchantable title at time fixed for performance, court's failure to sustain exception to general allegations as to defects in the title *held* harmless where specific objection set out in the petition as having been made to the abstract rendered the title unmarketable.

**17. Specific performance ⊕119 — Vendors seeking specific performance must prove that they furnished abstract required by the contract.**

Vendors seeking specific performance of contract requiring them to furnish abstract showing merchantable title at time fixed for performance had the burden of proving that they had furnished such an abstract.

**18. Specific performance ⊕116—Purchaser's answer to vendors' cross-petition for specific performance not required to specify the defects of title.**

In vendors' cross-action for specific performance, purchaser's answer pleading defective title was not required to specify the defects where it referred to opinion of purchaser's attorneys of which vendors had notice pointing out the specific defects.

**19. Husband and wife ⊕274(1)—Surviving wife's conveyance did not divest children of title where conveyance was rescinded and title reinvested in children.**

Surviving wife's conveyance of husband's land for purpose of paying debts did not divest the children of their interest where the conveyance was rescinded and the title reinvested in children in action by the children.

**20. Infants ⊕87—Default judgment against infant heirs on foreclosure of lien without appointment of guardian ad litem held voidable.**

In vendor's lien foreclosure action after death of owner, in which no guardian ad litem had been appointed for owner's infant children, the default judgment rendered against them was voidable, but not void, and could be set aside on appeal or in a direct proceeding for that purpose.

**21. Vendor and purchaser ⊕129(2, 3)—Title acquired by purchaser at vendor's lien foreclosure sale where no guardian ad litem had been appointed for owner's infant heirs held defective.**

Where vendor's lien was foreclosed after owner's death without having a guardian ad litem appointed for owner's infant children as required by Rev. St. art. 1942, and a default judgment was rendered against the children, the purchaser's title was defective.

**22. Vendor and purchaser ⊕130(8) — Outstanding oil lease renders title "unmarketable."**

An outstanding oil lease ordinarily conveys interest in the land and renders title unmarketable within contract requiring vendors to furnish a merchantable title.

**23. Vendor and purchaser ⊕130(8)—Grantee did not have "merchantable title" where grantor reserved oil, gas, and mineral rights.**

Where grantor reserved the oil, gas, and mineral rights, grantee did not have a "merchantable title" within contract requiring him to furnish abstract showing "merchantable title."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchantable.]

**24. Vendor and purchaser ⊕341(4)—Whether objections to title rendered it unmerchantable held for the court.**

In action to recover deposit, whether objections raised to title by purchaser rendered it unmerchantable *held* a question of law for the court, and not for the jury.

**25. Appeal and error ⊕1062(2)—Refusal to submit issue held harmless.**

In purchaser's action to recover deposit on vendors' failure to furnish abstract showing merchantable title at time fixed for performance, refusal to submit issue as to whether purchaser waived certain objections to title *held* harmless where other objections not waived rendered the title unmerchantable.

Appeal from District Court, Wheeler County; W. R. Ewing, Judge.

Suit by O. B. Berry against A. O. Sweet and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Hoover, Hoover & Willis, of Canadian, and Templeton & Templeton, of Wellington, for appellants.

Frank Willis, of Canadian, and Turner & Dooley, of Amarillo, for appellee.

HUFF, C. J. The appellee, Berry, as plaintiff, brought this suit against A. O. Sweet and H. A. Crowley, as partners and owners of certain land, and M. V. Sanders, to recover a deposit made with Sanders of $500 upon a contract between Berry and Sweet & Crowley, dated October 28, 1920. It is alleged, in substance, that in pursuance to the contract appellee, Berry, placed the sum of $500 in the hands of Sanders as forfeit money, which was to be returned to appellee forthwith in the event the attorneys for Berry should disapprove of the title to certain lands described in the contract; that on or about December 1, 1920, Sweet & Crowley delivered to the attorneys for appellee what purported to be complete abstracts of title to said lands, and that about December 12, 1920, the attorneys for appellee reported their disapproval of the

titles, which opinion and report contained divers and sundry objections to the title to all of the lands involved in the deed, and in particular condemning title to section 28, mainly on the ground that the title to said Sweet & Crowley was based upon a vendor's lien foreclosure obtained on or about October 14, 1919, in the case of Markey v. Cassle et al., No. 807 in the district court of Wheeler county, Tex.; that it appeared that one Elizabeth Cowan, widow of W. C. Cowan, deceased, who appeared to have a half interest in said section as community property of herself and deceased husband, and the minor Cowan children of said Elizabeth Cowan and deceased husband, who appeared to own the other half thereof by inheritance from their father, subject to the vendor's lien declared upon in said suit, and one Green, who held a mortgage upon said section, and one Stafford, who appeared to claim some interest therein, were omitted as parties defendant in said foreclosure suit, and were not included in the decree entered therein and the sale thereunder, through which Sweet & Crowley derived title; that promptly thereafter appellee, on or about December 13, 1920, redelivered the abstracts to Sweet & Crowley and advised them, as well as said Sanders, that the title to said land had been condemned and the ground therefor, and did then and there demand that appellants refund said sum of $500 earnest money there mentioned; that thereupon appellants stated that the objections to the title were based upon a misconception due to the fact that the abstracts which had been furnished plaintiff were incomplete, and that in reality all of the parties above named who were supposedly omitted as parties to the foreclosure suit were in fact made parties therein, and that the record showed everything in that respect to be regular, all of which would appear by perfecting the abstracts according to the representations of appellants, who claimed, moreover, that the various other criticisms made by attorneys of the title to the various tracts of land could be and would be satisfied in the amended abstracts, and requested appellee that he allow them to have the abstracts perfected and resubmitted to appellee's attorneys; appellee assented thereto; afterwards appellants made additions to the abstracts, and on or about January 1, 1921, resubmitted same to the plaintiff's attorneys, who proceeded to re-examine the title and found from the additions and amendments that said Elizabeth Cowan and her minor children and said Stafford and Green had in fact been made parties to said foreclosure suit, but said attorneys condemned the title on the ground that no guardian ad litem had been appointed to represent the minor children in said suit and judgment which was taken against them, and they were not represented by a guardian ad litem therein,

and because no notice of the sale effected upon the foreclosure judgment was served upon the minor defendants nor upon defendant Green; that, having condemned the title to section 28 on said ground, the attorneys omitted further special mention of the numerous objections to the title of the various tracts, which were stated in the original opinion rendered by said attorneys, many of said original objections still being unremedied, which likewise rendered said title unacceptable. Promptly after the attorneys advised appellee they still condemned the title the appellee, on or about January 6, 1921, in person redelivered the abstracts and advised appellants that the title had been condemned and the grounds therefor, and did then and there again make demand upon all of the appellants that they would return or cause to be returned to him the sum of $500, and that subsequent demand for the return was also made on or about January 15, 1921, and on or about February 14, 1921. He prayed for judgment for the $500 against all the parties.

The appellants answered by general demurrer and numerous special exceptions and special answers, setting up that there was no time limit for a compliance with the contract, and that they had a reasonable time in which to cure any supposed errors, and that appellants were entitled to further time for such purpose; that the claimed objections made by the attorneys were arbitrary, captious, capricious, and unreasonable, and not based upon any real defects; that the objection raised regarding the omission to appoint a guardian ad litem was not tenable, because it would be presumed in favor of the judgment in question and the absence of a recital to the contrary that a guardian ad litem was appointed, and several other reasons why the objections were not tenable; that the right to insist upon a peremptory demand for a return of the purchase money or performance of the conditions with respect to abstracts and showing of title was waived by the action of the parties in delivering the abstract, and the duty to furnish the abstract was a continuing duty. Appellee further waived the time in granting further time for corrections and amendments and accepting the return of the abstract, as the parties did, for the purpose of securing corrections and amendments and in treating the contract as still in force. It was alleged also that, after the objections were made with respect to the failure to appoint a guardian ad litem for the minor heirs of W. F. Cowan in the suit above mentioned, appellants proposed to appellee they would bring suit in the district court of Wheeler county against said minors and have a guardian ad litem appointed and bar any supposed equity of redemption and that appellee did not object to the bringing of any such suit or at least by his action and conduct waived his right to object to the

same; that the suit was actually brought against the heirs at this March term, 1921, and that service was had upon the minors, and that a guardian ad litem was appointed and appeared in the cause, and the case called for trial, and the court adjudged that the plaintiff Markey was entitled to judgment divesting the title and possession out of the minors and fixing it in said Markey for the benefit of appellants, and thereupon all the objections with reference to the heirs of Cowan, deceased, were removed and cured, and that said suit and judgment constituted a cure thereof within a reasonable time. After alleging other facts and matters, they prayed for specific performance of the contract against appellee. The appellee also answered by supplemental petition, setting up that time was of the essence of the contract, and that he had cattle and was purchasing cattle and desired the land for pasturage by the 1st of January, in accordance with the terms of the contract, and that appellants knew of this fact, etc. They further allege that they did not waive the other objections to the other tracts of land included in the contract of sale. At the end of the introduction of the testimony the court instructed a verdict for the appellee, and judgment for the $500, with interest thereon, was entered, from which this appeal is prosecuted.

The contract upon which the suit is based is dated the 28th day of October, 1920, entered into between A. O. Sweet, of Collingsworth county, and H. A. Crowley, of Wheeler county, of the first part, and O. B. Berry of Potter county, of the second part. The first parties agree to sell to the second party all of section 28, block R. E., containing 640 acres, and all of the E. ½ of section No. 30, block R. E., containing 320 acres, and all of the N. E. ¼ of section No. 29, in block R. E., containing 160 acres, and all of the N. W. ¼ of section No. 24, in block R. E., containing 160 acres, aggregating 1,280 acres of land, for a consideration of $16,000, $650 to be paid in cash at the delivery of deed to N. E ¼ of section 29 and the assumption of certain indebtedness thereon, and $2,600 cash on section No. 28, and the assumption of certain notes. The contract further stipulated:

"It is understood and agreed that the first parties are to pay the interest that has accrued on said notes up to the 15th day of December, 1920. The first parties are to pay all taxes on said land up to January 1, 1921. The second party places the sum of $500 in the hands of M. V. Sanders of Wheeler, Tex., as a forfeit that he will take said property and make the cash payment as herein mentioned on or before December 15, 1920, upon a condition that the title to said property is passed by the attorneys of the second party. The first parties execute their deed conveying said property to the second party, and place them in the hands of M. V. Sanders, of Wheeler, Tex., in escrow, with a copy of this contract, to be held until the final consummation of this deal. The first parties agree to furnish abstracts of title to the property being conveyed showing merchantable title thereto. Possession of said premises is to be given on or before January 1, 1921, together with the fence belonging to said land and pastures of the first parties and assignment of grass leases. This contract made and signed in duplicate this the 28th day of October, 1920. The abstracts are to be sent to Turner & Dooley at Amarillo, Tex., for examination." Signed by the parties.

The abstracts called for were submitted to appellee's attorneys about December 1, 1920, and after being examined the first time they were forwarded by mail to Sanders at Wheeler, Tex., accompanied by copies of the opinion rendered on or about December 6th. A great many objections to each of the tracts of land were made. On survey 29 is pointed out, on page 18, a deed to all mineral rights from Holt to Ford. Page 19 contains an oil and gas lease on the same land, but this leaves the title to the oil and gas rights in Ford. To the E. ½ of section 30 one of the objections made was to—

"an instrument on page 1 of the fifth abstract as the name of the grantee, C. T. Carter, whereas on page 3 of this abstract, in the suit of W. F. Cowan, the initials are given as C. F. Carter, and on page 4 in the judgment his initials are C. T. These should be compared again with the abstract to see whether the record contains the same discrepancy. To the same effect is the citation in this suit shown in the sixth abstract, at page 1, as it contains both the initials C. F. and C. T. in the body of the citation. The same error occurs on page 2 of the sixth abstract, where the name has the initials both ways again.

"(5) All mineral and gas rights in this land appear to have been sold by F. G. Ford to D. E. Holt on February 4, 1919, as shown on page 5 of the supplemental abstract and this title seems still to be in D. E. Holt. The abstract does not show that any reservation of the one-eighth royalty was made by Ford, but afterwards, on February 19, 1920, Holt makes a lease to Ford in the regular form, wherein he retains the one-eighth royalty. This leaves the one-eighth royalty in D. E. Holt, and thereafter Ford and wife conveyed this land to A. O. Sweet and H. A. Crowley, as shown on page 3 of the last supplemental abstract, retaining the vendor's lien to secure five notes for $750 each and one for $1,050, bearing interest at the rate of 8 per cent. from date; other lands being conveyed in this deed. But bear in mind in this deed the oil and gas and mineral rights are expressly reserved to F. G. Ford."

To the N. W. ¼ of section 24 the following objections were made:

"On pages 25 and 26 of the original abstract will be found the Dundee judgment hereinbefore mentioned, and on page 28 will be found the sheriff's deed, which purports to have been executed under said judgment. In

order to show good title under a foreclosure judgment and sheriff's deed, the record should contain the judgment, the order of sale, and the return thereon and the sheriff's deed. This abstract shows the first and last of these, but does not show the order of sale and return thereon. If the said order of sale and return thereon are not in fact of record in Wheeler county, they should be placed of record.

"(4) The land in question is subject to an oil and gas lease in the usual form, executed by F. C. Ford to A. B. Crowley, under date of April 14, 1920."

To section 28 an objection was made:

"(18) On page 11 of the supplemental abstract appears a sheriff's deed which purports to convey all the estate or title and interest which Cassle, Cole, and Hampton had in the property in question on the 14th day of October, 1919, or at any time thereafter. Neither of these defendants had any interest in the property on said date. The deed should convey the interest that they had on July 29, 1914, the date of the vendor's lien notes on which this judgment was rendered."

After the return of the abstracts to appellants and after correction they were again handed to Messrs. Turner & Dooley for examination, and on the 6th of January they gave the following opinion:

"Supplementing our opinion of December 6, 1920, relative to abstracts of title to survey 28 in block R. E., Wheeler county, Tex., beg to say that said abstract has been returned to us with another supplement thereto; and several of the irregularities which we mentioned in our former opinion have been corrected, but we are still unable to approve of this title, particularly for the following reasons: On page 9 of the second to the last supplemental abstract is shown a judgment in the case of Markey v. Cassle et al. In our former opinion we referred to this judgment and stated that apparently the only defendants in this suit were Cassle, Cole, and Hampton. However, the additional supplement that is now attached to the abstract shows that Mrs. Cowan, a widow, and her five minor children,, and one Stafford and W. R. and D. L. Green, were also defendants to said suit. The propriety of said D. L. Green being party to said suit was due to the fact that he held a mortgage lien against said section. The propriety of said Mrs. Cowan and children being parties to said suit was due to the fact that their deceased husband and father, W. F. Cowan, had obtained and recorded a deed to said land during his lifetime and before said suit was filed, and had never conveyed his interest, so that his interest descended to his children, assuming that he left no will disposing of his property otherwise. But, while the said Mrs. Cowan and minor children and said D. L. Green were in fact made parties to said suit, contrary to our previous conclusion, still the situation is in little if any better shape for two reasons, viz.: (a) There is no showing that any guardian ad litem was appointed to represent these minor children, and judgment was simply taken against them by default. (b) The sheriff's return upon order of sale issued under this judgment states that notices of the sale were sent to several named defendants, but is silent as to any notice being sent to these minor children or to said D. L. Green. We think that the two irregularities just mentioned are of such gravity as would almost surely subject said judgment to being reopened at the instance of such minors if they should elect to apply to the courts for that purpose and ask to redeem the land, and with the title in this condition we advise that it is subject to such doubt and uncertainty that it would not be classed as a merchantable title. In this connection we might mention that we have this day talked by long-distance telephone with the attorney for the plaintiff in the above-mentioned suit of Markey v. Cassle et al., and said attorney advised that he could not recall having had a guardian ad litem appointed for said minors, and was afraid he had likely overlooked that feature. So we think there can hardly be any doubt but what we are right in the conclusion that no guardian was appointed because said attorney fails to recollect any such appointment, and besides, if such appointment had been made, it should appear of record, and the abstract shows no such appointment. For the reasons above stated we feel obliged to disapprove of the title to said land."

By postscript:

"After the conclusion reached on the above title we thought it unnecessary to recheck the abstracts on the other tracts which were included in your proposed deal."

The facts show substantially that after the objections made to the title on December 6, 1920, Berry, Mr. Sweet, and Sanders met and had a conference with reference to the abstracts and objections, and that the appellants undertook to correct the abstracts; that Sweet told Berry, according to Sweet's testimony, that he would exert himself to get the abstracts to suit his attorneys if it could be done, and that Berry said all right; that there was no time limit set in that conversation as to when he should have the objections cured or satisfied, but it was understood that he was to hurry up and get it done as soon as he could. Later on he saw Berry as he was going to Wellington, and Berry wanted to know of him how they were getting along, and that he told Berry he thought they were getting along pretty good, and that Sanders had most of the work corrected and was working on the balance, and they talked some more on the subject on the way to Wellington. Berry said it looked like it was going to take until the 1st of January, and Sweet said it looked that way, but that he (Sweet) hoped to get it fixed up sooner, but said, "Give me a reasonable time; I will spend my money," and Berry said, "That is fair enough;" that he could not ask anybody to be fairer than that. December 16, 1920, Berry wrote Mr. Sweet a letter stating that—

"If the title can be made good, I am ready, willing, and want the land, but, if it is defective, I don't want it, and will expect the earnest money returned to me."

It seems that Mr. Sanders, or some one, had advised Sweet that the title was all right, and Mr. Berry in this letter told him that his attorneys assured him that Mr. Sanders was wrong, and on the 22d of December Sweet wrote to Berry, acknowledging the receipt of the letter, stating that—

"Mr. Sanders will have the abstracts ready some time next week, and me and him will be in Amarillo with the abstracts the latter part of the next week, and I think they will be in good shape."

After the abstracts or corrected abstracts were examined by Turner & Dooley on the 6th day of January, the parties again met at Shamrock and had a conference. Mr. Sweet's testimony on that point was that Mr. Berry came over to Shamrock, and that he went with Berry to his room in the hotel, and claims that in the conversation Berry told him that Turner & Dooley said that abstract on section 28 could not be cured, and he replied, "You mean it can't never be done?" and he says, "It might take 20 years," and Sweet says, "I never heard tell of that before; surely there can be a way to cure it;" that he (Sweet) thought it was terrible time, and they talked about the matter, and Sweet says he insisted that Berry give him a little more time to work on the abstract, and that he offered to turn the land over to Berry the 1st of January without any money on it, and that all he asked was time to correct the abstract; that Berry replied that he did not know about it hardly; that he had to go ahead and get grass for his cattle; that he (Sweet) replied that he would be glad to turn it over to Berry that year for nothing if he did not clear it; that Berry replied that would be working a hardship on Sweet; and that he (Sweet) in a way deprecated Berry's solicitude for him, and without claiming that any time further and nothing further was said with reference to Berry giving him any additional time. He said that he then told Berry he wanted to take the abstract to Wellington to Templeton and have him look it over. He said he would go to Wellington and see Templeton and bring him and try to talk to him (Berry), and that, when he got to Wellington, Templeton was trying a case, and he could not get Berry at Shamrock over the phone, and finally, when Berry got him over the phone, he told Berry that he would meet him (Berry) at Canadian on probably the 12th, but he was positive that they would meet there on Tuesday. Berry said he could not be sure that he could be there as he might have to be in Lubbock, but if he was not in Lubbock he would meet him in Canadian, and that was the extent of the conversation, and when the day for the Canadian meeting arrived there was a six-inch snow at Wellington. He did not think it hardly possible to go to Canadian, because he thought the further north the deeper the snow would be. The next he heard from Berry was January 12th, wherein Berry stated he had bought some grass and would not want Sweet's place. Mr. Berry's testimony shows that he went to Canadian, after his conversation with Sweet, and called for him at Mr. Willis' office, and that Sweet was not in Canadian, and that he remained over until next morning, and that next morning or next day he procured a lease on other land to obtain grass for his cattle. The testimony in this case shows by Berry that he was procuring this land in part for pasturage for the cattle that he then owned and was buying and that he wanted the place January 1st for the grass. There were also some several sections leased by Sweet and Cowan which they were to assign to Berry upon the completion of the trade, and these lands were held for pasturage. On the 12th of January, 1921, Mr. Berry wrote to Sweet:

"I returned home yesterday from Canadian. I was there specially to meet you, and you said you would be there and see what arrangements we could make. It appears our deal has been a disappointment from the beginning. You wrote me some time ago that you and the attorney was coming to Amarillo and failed to come; then you phoned me to meet you in Wheeler and failed to show up. After seeing you on Friday in Shamrock you told me you would come back there and meet me Saturday and failed to come and then after getting you by phone you told me you would meet me in Canadian Tuesday and failed to meet me again. Now, had you kept your promise and tried as hard as I have we could possibly reach some agreement, but I could not wait any longer, as I had the cattle and had to make some arrangements so have leased the ranch, and will expect you to send me an order releasing the escrow money, as you have failed to deliver the title according to contract. Of course, I realize that is caused by mistake on the part of your attorneys, but that is not my fault, as the title you offer is not merchantable. If it had been the deal would have been closed and you would have gotten your money. Now, I will expect to receive the order in a short time."

On the 13th of January Sweet wrote to Berry that he had been to great expense to close the deal and had made his arrangements, expecting to get the money.

"I have offered and will still do most anything you require that is fair to let you have this land. Mr. Newt Willis will correct these objections at the March term of the court to meet any objections, and I believe your attorneys will advise you he can remove this to their satisfaction."

He again made an offer to turn over possession of the land, and that, if he did not

.get the correction made at the March term, he would turn over the money. On the 15th of January Mr. Berry wrote:

"Received your letter to-day, and must confess I was disappointed in you again. As I wrote you before, I could not afford to be delayed in making my arrangements for grass land, and I had already leased a ranch. Had you met me at Shamrock or Canadian, we might of perhaps made another deal, for I had no desire to disappoint you, but did not care to be disappointed any further myself, and have leased a ranch, as I told you in my last letter, and have already ·made payment and have contracts for three years. I consider the deal at a close and do not wish to be deprived of the use of the earnest money any longer. Now, I am going to insist that you be as fair with me as I have been with you, so please send me an order for the money by return mail to save any trouble and annoyance."

On the 21st of January Sweet answered this letter, as follows:

"I have your favor in which you refuse to complete your deal with me and demand the release of your money. In view of the fact that I have offered to do everything that is fair with you, and after time for completion **of the deal you** did not call the deal off, but stated to me in both letters from yourself and your attorneys that you wanted the land if it could be cleared up in a reasonable time, and relying upon this new agreement, I went to the expense and trouble of having this objection removed. I do not feel that it is right to release this money. I am going to remove this objection and tender you this ·land and have arrangements made to clear this up. You say if I had met you at Canadian and Wheeler that we might have agreed, and I will ·say that, had your promised me definitely that you would have been at those places, I would have met you if I had to walk, but you said you might be at Lubbock and would not promise me definitely, and when it snowed dòwn here I did not think best to go up there unless I had a definite assurance that you would be there. If you had told me ·you would have met me, I would have been there, regardless of wind or weather."

The appellee, Berry, filed this suit shortly after receiving this letter for the return of the money. After this suit was filed a suit was filed in the name of John B. Markey against Winifred Cowan and others, the minor children of W. F. Cowan, setting up the fact of Markey holding the vendor's lien notes against the land, and the fact that W. F. ·Cowan had purchased the land, and that suit had previously been brought, and judgment obtained in that case foreclosing the lien against the parties and the Cowan children, which did not recite that an attorney ad litem had been appointed, and that an attorney ad litem had not been appointed, and asked for recovery of the land as against the children and adjudicating their right or equity · of redemption, etc. A guardian ad litem was appointed at the March term, 1921,

and judgment was rendered divesting the children of any interest in the land and foreclosing their right of redemption in favor of Sweet and Crowley, for whom Markey had brought the suit. This judgment was· tendered to the appellee upon the trial of this case, which occurred at the March term,. 1921, of the Wheeler county district court. At the same time they tendered a release or conveyance of D. L. Green's right or equity in and to the land by virtue of a deed of trust that had been executed on the land to· secure a debt due him and which had been pointed out as clouding the title in the opinion of the attorneys passing on the abstract.

The appellants' first and second assignments assail the verdict and judgment as being wholly unsupported by the evidence and law and error in not instructing a verdict for appellants, because: (1) That time was not of the essence of the contract; (2) the appellee wholly failed to give a reasonable time for perfecting the title and to satisfy the objections; (3) that the evidence shows appellee had waived the right to reject the title by reason of the opinion of his attorney and had granted further time to cure defects; (4) the appellee, after making demand for the return of the money, entered into ' negotiations to further perform the contract and extended the time within which appellant should furnish amended abstracts; (5) that appellee failed at any time to offer to perform on his part and to tender the balance of the purchase money and demand the deed.

The instant contract stipulates that Berry placed $500 in the hands of Sanders as a forfeit that he will take the property and make the cash payment on or before December 15, 1920, upon the condition the title to said property is passed by his attorneys. The vendors, the appellants, were to execute deeds conveying the land to vendee and place them in the hands of Sanders in escrow, with the contract, to be held until the final consummation of the deal. They agreed to furnish abstracts of title "showing merchantable title," which were to be sent to appellants' attorneys for examination. The possession of the premises to be given on or before January 1, 1921, together with the fences belonging to said land and pasture of appellants and an assignment of the grass lease.

[1-3] Until the conditions upon which the deposit was made had been performed the appellants were not entitled to recover it or to retain it and demand further cash payment. An abstract showing a merchantable title was a condition precedent to the execution of the contract or to enforce it. It is insisted there was no time fixed for presenting the abstract showing a merchantable title, and therefore a reasonable time is implied. It is quite clear from the con-

tract the appellee was not required to make further payment if the title was not approved by the attorneys before December 15, 1920, and it would further appear the consummation of the transaction was to be had on or before January 1, 1921, by delivering possession of the premises, fences, and the grass lease. While the contract does not in express terms fix a time for presenting an abstract or time for examination or correction, it, however, we think, clearly requires an abstract meeting the approval of appellee's attorneys before the payment of the first cash consideration, December 15th. This was, we think, a sufficient stipulation for such time. If, however, no time was fixed for presenting the abstract as required, then we think a reasonable time will be the obligation imposed upon the appellants. The question therefore is: What is a reasonable time under the terms of this contract? The rule in such case is that the abstract shall be furnished for examination within a reasonable time before the date fixed for performance of the contract. When at the time of the contract the vendor has no title, if he made the contract in good faith, he will be permitted to convey one at the time set for performance.

"All that is necessary is that the plaintiff is able to make the stipulated title at the time when, by the terms of the agreement, or by the equities of the particular case, he is required to make the conveyance to entitle himself to the consideration." Andrew v. Babcock, 63 Conn. 109, 26 Atl. 715; Runnells v. Pruitt (Tex. Civ. App.) 204 S. W. 1017; Martin v. Roberts, 127 Iowa, 218, 102 N. W. 1126.

In the latter case the plaintiff entered into a contract with the defendant to convey certain land owned by him. Five hundred dollars of the purchase price was paid at the time. The plaintiff agreed to assume the payment of the mortgage then on the land and to pay the balance of the agreed price in cash on the 1st day of March, 1903, at which time defendant was to execute and deliver to the plaintiff a fee-simple title with full covenants of warranty. The contract also provided that the defendant should furnish an abstract showing good and sufficient title in him. The petition alleged these facts, and that defendants failed to furnish any abstract of title before the 4th day of April, 1903, or until after he had been notified of plaintiff's election to rescind the contract. The demurrer avers that the balance of the purchase price of the land was due unconditionally on the 1st day of March, 1903, that time was of the essence of the contract, and that, plaintiff having failed to plead payment or tender of payment, he had forfeited the cash payment made and had no right of action. The court held on appeal:

"The demurrer should have been overruled. By the terms of the contract, the defendant was to furnish the vendee an abstract showing good and sufficient title; and, while no particular time was fixed, the law requires that it be furnished in a reasonable time for examination before the contract is to be performed. It was a condition precedent, and the defendant was not entitled to the balance of the money due under the contract until he had complied therewith."

That case also cites Primm v. Wise, 126 Iowa, 528, 102 N. W. 427, and Webb v. Hancher, 127 Iowa, 269, 102 N. W. 1127, which sustain the above proposition.

[4] With the allegation and proof that appellants did not show by abstract a marketable title at the time the contract was to be consummated, a default was shown upon the part of the appellants. Under the terms of the contract appellee did not forfeit the money in escrow on December 15, 1920, or January 1, 1921, because he did not pay the balance of the cash consideration for the reason the approval of appellee's attorneys was a condition precedent to a completion of the transaction. It is clear the reciprocal obligations to be performed by the respective parties were to be performed before December 15th. The abstract was presented before December 1, 1920, and the opinion of the attorneys, pointing out several defects, was given on the 6th of December, and returned for corrections or to show title.

[5] It is insisted, because the corrected abstracts were not returned until after December 15th and January 1, 1921, that there was a waiver of time for the completion of the trade and until the title could be marketable; that therefore, even though the abstract as corrected did not show a merchantable title, they yet had further reasonable time to make the title marketable. It is evident appellants were given all the time they deemed necessary to meet the objections and to present an abstract showing a marketable title. They are presumed at least to have known the condition of their title, and they showed the title they had, and, if it was not marketable, it would be a very unreasonable rule that would require the appellee to tie himself up by the contract together with his money an indefinite time, in order to permit appellants to institute a suit to perfect their title and to await the contingencies of a lawsuit. Instead of giving them a reasonable time, it would have been giving appellants an unreasonable advantage. The situation was through no fault of appellee. By the mere indulging of appellants for a few days over the time for completion of the trade in order that they might show title by abstracts, it does not seem to us this should have the effect to continue that indulgence indefinitely. Although it may have been shown at the trial that by suit the outstanding interest of the heirs had been divested out of

them, appellee's rights were not to be determined thereby long after he had demanded the return of his money and had instituted suit therefor, and before any action had been brought by appellants to divest the heirs of their interest. Adkins v. Gillespie, 189 S. W. 275 (7); Raywood v. Sharp, 175 S. W. 499; Moore v. Price, 46 Tex. Civ. App. 304, 103 S. W. 234; Ross v. Haynes, 196 S. W. 364; Long v. Oxford, 18 Tex. Civ. App. 415, 45 S. W. 395; Gregory v. Christian, 42 Minn. 304, 44 N. W. 202, 18 Am. St. Rep. 507. The evidence in this case is that after the attorneys gave their opinion on the correction presented January 1, 1921, appellants were notified thereof, and demand was made for the money on deposit. The appellants at that time did not offer within any time to correct the title, but sought advice from their attorney at Wellington and promised to meet the appellee at a time and place to see if they could not reach some understanding. The appellants did not meet the appellee as agreed upon, and the appellee was at the place at the time of the appointment, and thereafter proceeded to procure other pasturage for his cattle, as he had informed Mr. Sweet that he would be compelled to do.

[6] The facts in this case also evidence that time for the consummation of the contract between the parties was of the essence of the contract. The appellee bought this land under the contract that a grass lease on other and adjacent lands to that to be purchased was to be transferred to appellee, and that appellee had cattle and would purchase additional cattle for which he was procuring the land as pasturage to be used on January 1st, and also to farm for the incoming season. Appellants were notified at the time the correction of the abstract was presented, showing an outstanding interest in the Cowan heirs, by appellee telling Mr. Sweet that he would have to go ahead and procure grass for his cattle. Gaut v. Dunlap, 188 S. W. 1020; Garrett v. Cohen, 63 Misc. Rep. 450, 117 N. Y. Supp. 129.

[7] It will be noted this contract does not specifically require the purchaser to point out the defects in the title. It has been held, where this is not required by the contract, he is under no obligations to do so. Lessenich v. Sellers, 119 Iowa, 314, 93 N. W. 348; McCroskey v. Ladd, 3 Cal. Unrep. 433, 28 Pac. 216. Appellee having returned the abstract within a reasonable time, because of the defects, he is under no further obligation to continue the examination. Brown v. Widen (Iowa) 103 N. W. 158; 39 Cyc. 1521. It is doubtless true in this case appellee did assume to examine the abstract after the correction was presented to him on the 1st day of January, but, when the correction showed an unmarketable title, he was under no further obligations to examine the abstract, and he then had the right to reject the title.

[8] A reasonable time to furnish the abstract cannot be an issue in this case, in our judgment, for the reason that the record shows an abstract was furnished on the time appellants had selected for preparing and presenting it. The correction was also made and presented within their own time. As to that time we do not see how there can be a question that they did not have a reasonable time.

[9] The contract did not, after the first or the last rejection, stipulate for further time to make the title acceptable. If we should interpret the contract as granting a reasonable time to supply a corrected abstract, we would not be authorized to imply also that there was a reasonable time "in which to perfect and make good a defect in the title." Gregory v. Christian, 42 Minn. 304, 44 N. W. 202; 18 Am. St. Rep. 507. If there is an implied agreement to grant a reasonable time for correction, it ought not, it seems to us, to imply a repeated extension of time. When appellants presented the corrected abstract, if there is any presumption or implication, it should be that it was presented as showing appellants' title as it then was. If there was an encumbrance or an outstanding interest shown thereby, we do not think the contract would imply a further extension for the purpose of giving appellants time to sue for that interest or obtain conveyance thereof. The appellee was then entitled to the title required by the contract and the deeds, or that his money be returned to him. He is not suing in this case for a forfeiture; he sues for his own. The appellants seek to make their repeated defaults grounds for retaining the money because the balance of the consideration was not then paid or offered to be paid.

[10] But it is urged, after appellee had requested and demanded the return of the deposit, that he then entered into negotiations for further time, and that this was a waiver. The evidence simply shows, as we interpret it, that appellants, through Mr. Sweet, requested that appellee waive the title or an abstract, and that he take possession of the land until such time as he should be able to remove the objections by suit. The parties did not reach this agreement, but were negotiating the matter over the phone, and made an agreement to meet at Canadian and finally determine the matter. The appellee went to Canadian in pursuance to such agreement, but the appellants did not meet him there, and he remained that day and night, hoping to meet them, but when they did not come he proceeded to lease other land, and after doing so returned home, wrote a letter to the effect that he had kept his appointment, that Sweet was not pres-

ent, and that he could not afford to wait longer, and leased other land, which he had told Sweet he would require, and demanded the return of his money, which was declined by appellants writing, excusing their failure to meet him at Canadian on account of the snowstorm, etc. We do not think that this amounts to a waiver. The mere fact that they were willing to enter into further agreement about it if they agreed to satisfactory arrangements did not amount to a waiver or an agreement to await the result of a suit to be filed thereafter, and we think the court was correct in so interpreting the evidence as not authorizing, or sufficient to authorize, a jury to so find.

[11, 12] It is our view, under the contract, when appellee alleged and proved the abstract was not presented showing the title called for by the time the contract was to be consummated, he made out his case, authorizing him to recover the deposit. If there was any equitable ground which would excuse the appellants, it was on them to allege and prove it. Green v. Chandler, 25 Tex. 148; Giles v. Union Land Co., 196 S. W. 312; Fordtran v. Cunningham, 177 S. W. 212. The general rule, as we understand it, in this state, is that the vendee is not required to accept a defective title so long as the contract remains executory. Baldridge v. Cook, 27 Tex. 570.

[13] There may be cases where the vendee has gone into possession of the land, and after delivery of the conveyance the vendor may tender deeds or the like, making the title good at the trial when the vendee seeks to defend or defeat his obligation to pay the purchase price by setting up the defect in the title. But where, as in this case, the vendee is not in possession, and no delivery of the title paper has been had, and the contract makes a merchantable title a condition precedent to liability or to specific performance, we do not think the burden is on the vendee to show that there was no waiver of title, but it should be on the vendor to show there was a waiver. If there had been an agreement to await the result of the suit to establish the title, then doubtless the title could be tendered in a reasonable time after such suit, but, where the vendee, after the time for performance, because the abstract shows an outstanding interest, declares a default and sues for the money deposited, it is too late, we think, to permit the vendor to present a judgment or deed as complying with the contract.

[14] It is insisted in this case that by the opinion of the appellee's attorneys on January 6, 1921, pointing out particularly the defect in failing to appoint a guardian ad litem for the Cowan heirs, this was a waiver of the defects as to the other sections of land, such as the objections to the outstanding oil lease and the like. In the opinion the attorneys simply say they had not rechecked the abstract to see if the defects had been corrected, implying, it seems to us, if not corrected, the objections originally made would be insisted upon. It seems to have been the purpose in their last opinion to direct appellee's attention to the fact that, while the original abstracts were corrected so as to show the Cowan children were parties to the suit and judgment, the judgment yet showed an unmarketable title, for the reason there did not appear of record that a guardian ad litem was appointed. This last opinion does not, in our judgment, waive the objection theretofore pointed out. It is not pretended, as we understand, that the oil lease and some other matters were eliminated by correction, but they remain uncured. The contentions in these defects were waived. We do not think the objections as made January 6th should be so interpreted, but, on the contrary, it rather evidences they were relied upon if the abstracts did not show a correction as to them.

[15-17] However, the appellee in his petition did not allege the outstanding oil leases and other matters specifically as affording grounds upon which the default was based, but only alleged in a general way that the title to the land was shown by the abstracts to be defective in divers and sundry particulars, which had been pointed out. These allegations were too general, and the trial court should have sustained the appellants' fifth special exception to the petition on that ground. This, however, is not reversible error if the specific objection set out in the petition as having been made to the abstract rendered the title unmarketable. But the appellants, by way of cross-action, sought specific performance of the contract. In order to establish such right, they were required to show that the condition precedent had been performed by them. If they failed before such suit to present abstract showing marketable title, whether it be in the establishment that they had divested the Cowan heirs of their interest or had secured reconveyance of the oil lease, or the like, they could not specifically perform it. Upton v. Maurice, 34 S. W. 642; Ross v. Thigpen, 140 S. W. 1180; Bowles v. Umberson, 101 S. W. 842; Alling v. Vander Stucken, 194 S. W. 443.

[18] The appellee answered the plea of specific performance to the effect that the defects specifically alleged in his petition were not the only defects, but divers other defects were pointed out, of which defects the appellants were specifically informed, and had notice of appellee's objections, and that no effort whatever had been made to correct them, and by reason of such defects the appellants have never been able to tender appellee a good, merchantable title. We do not think in answer to the cross-petition appellee was required to specifically set out the

defects of title not cured, especially when he refers to the opinion of which appellants had notice, pointing out the specific defects which had not been corrected. The objection to the title pointed out that on the northeast quarter of section 29 there was an outstanding oil lease, and on the east half of section 30 an outstanding mineral deed and oil and gas lease. On section No. 24 there was shown an outstanding oil and gas lease, and also on that section the Dundee foreclosure judgment and sheriff's deed were shown, but there was no order of sale shown in the abstract, and to section 28 the sheriff's deed showed the conveyance of the interest of the defendants in that judgment at a date at which they had no interest, and also as to section 28 the judgment against the Cowan heirs did not show an appointment by the court of a guardian ad litem. There was no effort apparently to correct these objections except after this suit was brought the appellants instituted a suit to divest the Cowan heirs. The judgment obtained in those proceedings was had at the same term of court at which this case was tried, and the judgment on the trial of this case was tendered together with appellants' deeds to the property. Without at this time discussing the several defects pointed out, we do not think the court should have instructed that the abstract presented a merchantable title and have directed a verdict for appellants. We see no reason under the pleadings for specific performance and the answer thereto, and aside from appellee's petition, why judgment could not be rendered for the appellee that appellants take nothing on their plea for specific performance and that he recover the deposit. At any rate, we do not think a jury would have been justified in finding appellee waived the defects pointed out. Certainly the court would not have been authorized to instruct the jury that it was conclusively shown the appellee waived the defects. There is no assignment that the court erred in instructing a verdict for appellee. The first and second assignments are overruled.

Assignments 3 to 6, inclusive, will be considered together. These are to the effect that the trial court erred in refusing to give special issues requested by appellants, requiring the jury to find: (1) If appellee's attorneys had reasonable grounds for believing the abstract did not show a merchantable title. (2) Were the objections merely capricious, unreasonable, and captious? (3) Did plaintiff reject defendants' offer to furnish title fraudulently to evade performance of his obligation? (4) An assignment is presented based upon the refusal to submit the third special issue asserting error because under the facts and circumstances the two suits against the Cowan children failed to show reasonable grounds to believe the minor children might seek to redeem the land. [19-21] As to the minor children their fa-

ther was the owner of the land at his death. The facts show the land was the community property of their father and mother. One-half of the land was therefore inherited by the children upon the death of their father. A foreclosure suit was instituted by Markey after the death of their father, and the children were made parties thereto. A judgment was taken against them, but the record fails to show that a guardian ad litem was appointed to represent them in that suit. Before this suit was filed, however, Mrs. Cowan conveyed the land to Oscar M. Stafford for the recited consideration of $175 cash and the assumption of $4,200 due Markey, doubtless the indebtedness upon which a foreclosure was subsequently had. But after this sale Mrs. Cowan brought suit in her own name and that of her children, the heirs of W. F. Cowan, against Stafford, to cancel the deed theretofore executed to him. This suit was continued for one or two courts. Thereafter, it is shown by the abstract, there was a deed by which Stafford reconveyed the land to Mrs. Cowan in consideration of the compromise of the suit theretofore filed to rescind whereby Stafford relinquished all of his interest in and to the land theretofore conveyed to him by Mrs. Cowan. It is insisted on this appeal as Mrs. Cowan could, under the law, convey to pay community debts, and having done so, the children were divested of all estate in the land. This might be true if the abstract had not shown that this conveyance had been rescinded and the title reinvested. The children, by their mother, sued Stafford, to whom she had conveyed the land, and thereby accomplished that purpose by procuring a reconveyance as a compromise of the suit. We think the attorneys examining the abstract were justified in so advising their client. In order, therefore, to divest the heirs of their interest, Markey was required to make them parties to the suit of foreclosure. Under article 1942, R. C. S., it was the duty of the court to appoint a guardian ad litem for the defendant minors. If this was not done, the judgment is voidable, but not void, and may be set aside on appeal or in a direct proceeding for that purpose. Wallis v. Stuart, 92 Tex. 568, 50 S. W. 567; Wichita Land & Cattle Co. v. Ward, 1 Tex. Civ. App. 307, 21 S. W. 128; Sprague v. Haines, 68 Tex. 215, 4 S. W. 371; City of Dallas v. Crawford, 222 S. W. 305. The petition for foreclosure in the Markey suit alleges the Cowan heirs were minors, but the judgment therein shows a default judgment was taken against them, affirmatively, we believe, showing no guardian ad litem was appointed for the children. It may be that a writ of error under the condition of that record would be the remedy of their heirs, as the record in that suit shows in effect they were minors, and that a default judgment was taken against them. The judg-

ment is dated October 14, 1919. It is insisted, as no writ of error was sued out when the contract was entered into, the right to sue out the writ was barred. The abstracts do not show that the disability of these minors was removed more than one year, or six months as now provided, at the time of the rejection of the title. If their disabilities were not removed, they were entitled to prosecute an appeal by writ of error or have instituted an action to set aside the judgment as to them. This is so determined by the Supreme Court in Fine v. Freeman, 83 Tex. at page 536, 17 S. W. 783, 18 S. W. 963, on motion for rehearing.

[22-24] An outstanding oil lease ordinarily conveys an interest in the land, and would, we think, affect the title and render it unmarketable within the meaning of that term. Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105; Linscott v. Moseman, 84 Kan. 541, 114 Pac. 1088; Adams v. Henderson, 168 U. S. 573, 18 Sup. Ct. 179, 42 L. Ed. 584; Eversole v. Eversole (Ky.) 85 S. W. 186. Ford conveyed one tract to Sweet and Crowley, and in the deed the oil, gas, and mineral rights are expressly reserved to F. G. Ford. We think the objections pointed out defects in the title rendering them unmerchantable within the meaning of that term. Adkins v. Gillespie, 189 S. W. 275; Alling v. Vander Stucken, 194 S. W. 443; Moser v. Tucker, 195 S. W. 259. The contract bound the appellants to present a merchantable title. It was, we think, a question of law whether the title presented, with the objections thereto, rendered the title unmerchantable. If, under the law, the objections pointed out defects as shown by the record rendering the title such as did not meet the agreement, we think it was for the court to say whether the objections were reasonable. The jury, in our judgment, had no facts upon which to base a finding that the attorneys and appellee were captious or capricious, as we think the title did not fulfill the agreement. The judgment against the heirs, who were minors, showed to be defective, or at least failed to show their interest had been divested out of them, in accordance with the laws of this state. The oil lease conveyed an interest in the land, and in fact the mineral rights were expressly reserved in appellants' vendor to one of the tracts and of which appellants had no right, and hence could not convey. The heirs may never have sought to set aside the judgment, but the appellee had a right to demand a title which would protect him from anxiety lest annoying suits be brought against him, whether they would be successful or not, and to have a title by which he could exclude prospectors for oil or exclude them from entering his premises therefor, and one which did not grant free ingress or egress at all times to his premises. We think an attorney would be unfaithful to his client if he failed to point out such defects or to advise him of the consequences. They were not captious or capricious or unreasonable in making the objections, but they would have been derelict if they had not done so. The court was justified in holding there were no facts to submit to the jury on the issues requested. Greer v. Stockyards, 43 Tex. Civ. App. 370, 96 S. W. 79; Alling v. Vander Stucken, 194 S. W. 443; Moser v. Tucker, 195 S. W. 259; Wakeland v. Robertson, 219 S. W. 842; Adkins v. Gillespie, 189 S. W. 275; Wright v. Glass, 174 S. W. 717; Giles v. Union Land Co., 196 S. W. 312. In this case we find no facts which would authorize a jury in finding that the attorneys or appellee acted in bad faith in rejecting the title. They call attention to the defects and permitted appellants to correct the abstract to show their record title and manifested every desire for the land save that of accepting a defective title. 6 R. C. L. p. 956, § 335; City of Amarillo v. Slaton, 208 S. W. 967.

Assignments 7 to 11, inclusive, urge error in refusing to submit special issues as to whether the appellee waived the defects in the title or extended the time in which to furnish the title, whether he waived the return of the purchase money, and whether the presenting of the judgment against the Cowan heirs at the trial was within a reasonable time. There was no issue presented in the evidence upon which the jury could have found appellee waived the defects as to the Cowan heirs' interest. There might possibly have been an issue as to the oil lease, etc., in regard to waiver but we hardly think so. If the Cowan interest was a defect, appellee was justified in refusing to take the title, and the issue requested was therefore properly refused. As to extending the time to correct the abstract to show title, the only testimony justifying that submission would be the evidence relative to the conference between appellee and Sweet after December 6th, and before January 6th, in which Sweet in effect said he would exert himself to get abstracts to suit appellee's attorneys and appellee, and that appellee said, "All right, go ahead and do it." The evidence shows he did take time to correct the abstracts and presented them January 1st, which yet showed defects in the title. From this testimony the jury would not have been justified in finding that the appellee agreed to give the appellants any time to procure an outstanding title or to sue to clear up the title. All that was agreed to was to obtain an abstract showing a marketable title. When they presented the abstract as showing appellants' title, it would seem that the time agreed upon had been fulfilled. Certainly there was no agreement to extend the time indefinitely. Clearly there was no agreement after January 6th for further time. The parties sought to reach an understanding, but did not. If the ap-

pellant Sweet had kept his appointment, which he made with appellee, an agreement might have been made, but this lacks much of making an agreement. These assignments will be overruled.

Assignments 12 to 16, inclusive, are based upon the action of the court in overruling a general and certain special exceptions to the petition. There was no error in overruling these exceptions.

Assignment 17 presents error in overruling special exception No. 5. This exception goes to the general averment that there were divers other defects pointed out in the abstract, but which were not specifically alleged. The exception called for a more specific allegation. This exception should have been sustained, but this does not show reversible error, and no injury is shown in overruling it, as the petition otherwise presented a cause of action in specifically alleging the defect with reference to the Cowan heirs as heretofore pointed out.

The eighteenth assignment of error is based on an exception to the generality of the allegation in the supplemental petition in answer to appellants' cross-action for specific performance. There was no error in overruling this exception as pointed out in our discussion of the first and second assignments.

[25] The nineteenth assignment presents error in refusing to submit a special issue asking if appellee waived other objections to the title than those asserted to the judgment of foreclosure as against the minor children of Cowan. If the facts raised that issue, and an affirmative answer had been given to the issue, this, in our judgment, would not have defeated appellants' right to recover the deposit or have authorized appellants to a judgment for specific performance. The appellee clearly did not waive the objections to the title on account of the defective judgment against the Cowan children, and, as we think such defect rendered the title unmerchantable under the terms of the contract, there was no reversible error in refusing this issue.

The twentieth assignment is overruled for the reasons given in considering assignments 1 and 2.

We believe the judgment should be affirmed.